# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3250

_____

Ebony T. Jackman

*Plaintiff - Appellant*

v.

Fifth Judicial District Department of Correctional Services; Iowa Department of Corrections

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: April 11, 2013
Filed: August 28, 2013

_____

Before MURPHY, BEAM, and BYE, Circuit Judges.

_____

BEAM, Circuit Judge.

Ebony Jackman appeals the district court's[1] grant of summary judgment in favor of the State of Iowa in this employment discrimination case. We affirm.

_____

[1]The Honorable Thomas J. Shields, Chief United States Magistrate Judge, Southern District of Iowa, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c).

## I.    BACKGROUND

Jackman is an African-American woman who is and has been employed by the state as a residential officer at the Fort Des Moines Residential Facility since 2000. She alleges that she has been subjected to a variety of discriminatory conduct and harassment by co-workers and a supervisor after she complained about an incident in November 2007 with her direct supervisor, Mary Little. Little complained that she did not like the three "black women" on her shift because one "whines all the time," the second is "late all the time," and the third "wants to leave all the time." Jackman confronted Little about these comments, and Little confirmed that she was referring to Jackman as the person who wanted to leave all the time. Jackman filed an internal written complaint based on this incident. Little also called Jackman at home and told her that Jackman did not need to coordinate her schedule with her husband's (who worked at the same place) because she was a "big girl"; suggested that Jackman switch to a part-time schedule to better care for her familial responsibilities; and also asked whether Jackman's husband had ever hit Jackman. In another incident, Little walked into the bathroom where Jackman was in a closed stall getting sick and yelled, "who's in there?" Other incidents comprising the basis of this lawsuit include a co-worker's comment that watching the movie "Roots" qualified as studying African-American culture, and a co-worker's ill-conceived joke suggesting that black people were prone to domestic violence.

In addition to the complaint filed against Little in 2007, Jackman filed a written grievance with her union representative on March 1, 2008, and filed this lawsuit on September 14, 2009. Specifically, she contends that the following investigations were in retaliation for her internal complaints and the instant federal court case: for her alleged misuse of sick leave and for a "count" violation, both in August 2010; and for abandoning her post and for allegedly intimidating a witness with regard to the post-abandoning incident, both in 2011. Plaintiff also asserts that she has been excessively "coached and counseled," and points to her performance log, which is

twenty-nine pages long, eleven pages longer than the performance logs for eight other employees combined, as an indication of discrimination and retaliatory conduct. It is undisputed that the state has never terminated, suspended, or demoted Jackman and she continues to be employed by the state without a loss in pay or benefits. Jackman alleges that, due to work-related stress from the described discrimination and harassment, she has exhausted her leave options and has had to borrow leave from a leave bank comprised of donated leave from other state workers.

Jackman filed the current action, alleging sex and race discrimination, retaliation and sex and race harassment, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and also brought a claim for retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq. (FMLA). The state moved for summary judgment and the district court found that as a matter of law, the state's alleged conduct did not rise to the level of illegal discrimination or retaliation because Jackman suffered no adverse employment action. The court also found the alleged harassment was not sufficiently severe or pervasive to alter a term or condition of Jackman's employment. The district court dismissed all but one of Jackman's claims on summary judgment. It stayed her FMLA claim pending an anticipated Supreme Court ruling on the issue of whether states were entitled to Eleventh Amendment immunity for FMLA claims. While her FMLA claim was stayed but still pending, Jackman attempted to appeal the Title VII claims dismissed on summary judgment. We dismissed the appeal, pointing out that we did not have jurisdiction over the case because one of Jackman's claims was still pending. Subsequently, the Supreme Court ruled that states were entitled to Eleventh Amendment immunity against FMLA self-care suits. See Coleman v. Court of Appeals of Md., 132 S. Ct. 1327 (2012). Accordingly, the parties had a status conference with the district court to discuss how to proceed with the stayed claim. This conference occurred on June 27, 2012, and at this conference, Jackman moved to dismiss her FMLA claim. On July 2, 2012, the district court entered an order dismissing her FMLA claim without prejudice. No separate judgment was entered

pursuant to Federal Rule of Civil Procedure 58[2] following this July 2, 2012, order. And, the stay originally entered by the district court in 2011 was still in place. Thus, on August 23, 2012, the district court, sua sponte, entered another order for "Entry of Amended Judgment," asking the clerk to enter judgment with respect to Counts I, II and III (the Title VII claims). The district court also lifted the stay of the FMLA claim and dismissed the FMLA claim without prejudice. This amended judgment was entered by the clerk on August 24, 2012. It is from this August 24 order that Jackman appealed on September 19, 2012.[3]

## II. DISCUSSION

We review the district court's grant of summary judgment de novo, affirming only if there is no genuine issue of material fact, and the defendant is entitled to judgment as a matter of law. Butler v. Crittenden Cnty., Ark., 708 F.3d 1044, 1048 (8th Cir. 2013).

---

[2]Rule 58 provides in relevant part that every judgment and amended judgment must be set out in a separate document. Fed. R. Civ. P. 58(a).

[3]The state argues that Jackman's appeal is not timely because the July 2, 2012, order dismissing the FMLA count without prejudice ended the case and triggered the thirty-day appeal period. Jackman argues that the case was not finally adjudicated until the district court directed the August 24 court order be entered and that her appeal, taken within thirty days of that order, is timely. We agree with Jackman that her appeal is timely, and note that if she had appealed prior to the August 24 order, her appeal would have been dismissed as premature. See Moore v. St. Louis Music Supply Co., 526 F.2d 801, 802 (8th Cir. 1975) (holding that appeal was premature where district court did not yet "enter[] judgment on a separate document as required by Federal Rule of Civil Procedure 58").

## A. Adverse Employment Action

Jackman brought claims of race and sex discrimination and retaliation, all in violation of Title VII. However, each of these causes of action fail for the same reason: she has not suffered an adverse employment action. To establish a prima facie case of race or sex discrimination, Jackman must show that she: (1) is a member of a protected class; (2) was meeting her employer's legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated employees who were not members of her protected class. Norman v. Union Pac. R.R. Co., 606 F.3d 455, 461 (8th Cir. 2010). To establish a prima facie case[4] of retaliation, an employee has the initial burden of establishing retaliation by showing that (1) she engaged in protected conduct; (2) she suffered a materially adverse employment action; and (3) the adverse action was causally linked to the protected conduct. Pye v. Nu Aire, Inc., 641 F.3d 1011, 1021 (8th Cir. 2011). Further, retaliation must be the "but for" cause of the adverse employment action. Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2528 (2013).

An adverse employment action is defined as a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge. Wilkie v. Dep't of Health and Human Servs., 638 F.3d 944, 955 (8th Cir. 2011). However, minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise

---

[4]Our ultimate conclusion would not change if we accepted Jackman's argument that transcripts of conversations, surreptitiously recorded by Jackman, with her supervisor at the time, Art Rabon, constitute direct evidence of retaliation. In a "direct evidence" case, Jackman must still establish that she has suffered a materially adverse employment action. Young-Losee v. Graphic Packaging Int'l, Inc., 631 F.3d 909, 912 (8th Cir. 2011).

to the level of an adverse employment action. Id. In the retaliation context, a materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Recio v. Creighton Univ., 521 F.3d 934, 940 (8th Cir. 2008) (quotation omitted).

Jackman did not establish a prima facie case of sex and race discrimination or retaliation because she cannot show, as a matter of law, that she suffered an adverse employment action. She suffered no termination, cut in pay or benefits, or changed job duties or responsibilities. Wilkie, 638 F.3d at 955. Jackman argues that the depletion of her sick leave constitutes an adverse employment action. However, rather than an adverse action, the favorable employment benefits (including the opportunity to use donated sick leave from the leave bank) afforded by the State of Iowa to Jackman allowed her to take a substantial amount of leave instead of requiring her to quit her job. Jackman also asserts that the depleted leave situation amounts to the same thing as a constructive discharge, except that Jackman has not, and cannot afford to, quit her job. We disagree and note that Jackman does not allege she has been forced by the state to take leave, either paid or unpaid, and therefore cannot establish constructive discharge based upon leave use. See White v. Honeywell, Inc., 141 F.3d 1270, 1279 (8th Cir. 1998) (holding that forced unpaid medical leave is analogous to quitting for purposes of the constructive discharge analysis). Jackman also asserts that the length of her performance log and the number of coaching and counseling sessions she has endured are materially adverse employment actions. However, Jackman's argument fails because no adverse action has been taken as a result of the longer personnel file. See Tademe v. Saint Cloud State Univ., 328 F.3d 982, 992 (8th Cir. 2003) (employer's act of "papering" file with false allegations of unprofessional conduct was not adverse because no actions were taken as a result of the large employment file).

Finally, Jackman errantly relies upon Kim v. Nash Finch Co., 123 F.3d 1046 (8th Cir. 1997) and Phillips v. Collings, 256 F.3d 843 (8th Cir. 2001), in support of

her adverse employment action arguments. The Kim plaintiff, unlike Jackman, was given reduced job duties. 123 F.3d at 1060. And the Phillips plaintiff was subjected to harsh and extraordinarily lengthy performance evaluations wherein termination was recommended. 256 F.3d at 848-49. Jackman's situation does not approach the "particularly extreme set of facts" and "systemic bad treatment" presented in Kim and Phillips. Higgins v. Gonzalez, 481 F.3d 578, 588 (8th Cir. 2007), abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011) (en banc). Accordingly, the district court properly granted summary judgment in favor of the state on Jackman's race and sex discrimination and retaliation claims.

## B.     Harassment

Jackman's remaining claim for relief is for hostile work environment harassment, based upon her race and her gender. Hostile work environment harassment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotations and citation omitted). To succeed on a harassment or hostile work environment claim under Title VII, Jackman must establish: "(1) [s]he is a member of a protected class; (2) unwelcome harassment occurred; (3) there is a causal nexus between the harassment and [her] protected-group status; (4) the harassment affected a term, condition, or privilege of [her] employment; and (5) [the state] knew or should have known of the harassment and failed to take prompt and effective remedial action." Robinson v. Valmont Ind., 238 F.3d 1045, 1047 (8th Cir. 2001). The standard for demonstrating a hostile work environment under Title VII is "demanding," and "does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace." Wilkie, 638 F.3d at 953 (quotations omitted). Considering the totality of the circumstances, in order to find that the harassment affected a term, condition

or privilege of employment, Jackman must be able to establish that the conduct was extreme, such that intimidation and ridicule permeated the workplace. Id.

The district court found that the conduct described above did not affect a term, condition or privilege of employment because this conduct was not severe or pervasive enough to constitute actionable discrimination. We agree that the conduct described was not severe or pervasive when compared to our many cases on this issue. The incidents took place during a span of over three years and were relatively infrequent. See Singletary v. Mo. Dep't of Corr., 423 F.3d 886, 893 (8th Cir. 2005) (requiring more for actionable harassment than a few instances of allegedly racist comments over a course of years). Likewise, the incidents are not of such severity that a reasonable person would consider her work environment to be hostile or abusive. See Smith v. Fairview Ridges Hosp., 625 F.3d 1076, 1086-87 (8th Cir. 2010) (holding that comments about racial stereotypes were of insufficient severity to constitute actionable harassment), abrogated on other grounds by Torgerson, 643 F.3d 1031. On their face, Little's and the co-worker's comments are best characterized as offensive, but not so severe or pervasive as to permeate the workplace. Id. at 1086. Accordingly, summary judgment was appropriately granted on the harassment claim.

## III.   CONCLUSION

We affirm the district court.

_____