# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1494
_____

Thomas Denn

*Plaintiff - Appellant*

v.

CSL Plasma, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 18, 2015
Filed: March 16, 2016

_____

Before COLLOTON, GRUENDER, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Thomas Denn sued his former employer, CSL Plasma, Inc. ("CSL"), claiming that CSL had violated the anti-discrimination and anti-retaliation provisions of the

Missouri Human Rights Act ("MHRA"). Both Denn and CSL filed motions for summary judgment, and the district court[1] granted CSL's motion. We affirm.

I.

CSL operates a number of blood plasma collection facilities around the country, including in Kansas City, Missouri. Denn worked at the Kansas City facility as an assistant center manager until November 8, 2012, when CSL terminated his employment. According to CSL's records, Denn received positive reviews during his first few years, including a "strong" rating in or around September 2011 from his then-supervisor Shane Kennedy, a male CSL employee who worked as the center manager. Later in 2011, however, Kennedy issued Denn two separate verbal warnings for revealing confidential information.

In January 2012, Rebecca Heatherman replaced Kennedy as manager of the Kansas City facility. In this capacity, Heatherman supervised both Denn and another assistant center manager, Cristina Ceniceros. Denn and Ceniceros shared many of the same duties and divided the workload evenly. During the time that Heatherman supervised Denn and Ceniceros, Heatherman provided Denn with numerous verbal and written warnings for deficiencies in performing these duties. Ceniceros received no such discipline. In February 2012, for example, Heatherman provided Denn with a written warning noting that Denn was not meeting his responsibility to spend at least half of his time building relationships, interacting with staff, and managing workflow in the center's production areas. The warning also cited several instances when Denn had failed to deliver timely corrective actions to employees that he oversaw. The warning required Denn to create a development plan to correct these performance deficiencies, and it also stated that failure to improve his performance

---

[1] The Honorable Greg Kays, Chief Judge, United States District Court for the Western District of Missouri.

could result in additional corrective action. Denn submitted the required development plan on March 5, 2012.

From that date through August 2012, Heatherman had numerous conversations with Denn about his performance. These conversations related to Denn missing deadlines, interacting poorly with others, failing to communicate with his peers and supervisor, and failing to administer corrective actions to the employees he supervised. During one of these discussions, Denn explained that he was having difficulties managing his time and delegating tasks.

Several months after Denn's initial written warning, Heatherman and Denn reviewed his progress relative to his development plan goals. During this meeting, Heatherman noted several assigned tasks that Denn had failed to complete, but the two agreed that Denn had demonstrated significant improvement since submitting his development plan. Heatherman and Denn included a statement recognizing this progress in a second development plan, which also highlighted several areas in which Denn needed to demonstrate further improvement.

Despite Denn's initial progress toward his development goals, his subsequent performance led to additional discipline. On July 19, 2012, Heatherman sent an email to CSL's human resources department ("human resources") requesting permission to proceed with a final written warning against Denn based on issues she had observed during the preceding weeks. Heatherman's request noted various inappropriate statements Denn had made to other employees and described a three-day period during which Denn's failure to effectively manage and support his staff significantly reduced the center's productivity. Heatherman received approval to deliver the final warning at some point between the end of July and the middle of August.

On August 17, 2012, Denn complained to human resources about Heatherman, explaining that Heatherman was discriminating against him based on his sex. Several

days later, a member of human resources discussed this complaint with Denn and then conducted an investigation that involved interviewing several employees and reviewing various documents. At the conclusion of this investigation, human resources determined that Denn had not suffered any discrimination.

On August 21, 2012, Heatherman served Denn with his final written warning. The document noted the various instances in which Denn had performed below expectations, and it specifically instructed Denn to be more diligent in communicating important information to peers and supervisors.

Denn took a leave of absence from mid-September to mid-October 2012. Shortly after his return, Denn received an addendum to his final written warning that revised his development timeline in light of his absence and reminded him of the need to provide peers and supervisors with necessary updates according to the communication channels described in CSL's employee handbook.

On October 31, 2012, an incident occurred between two of the employees under Denn's supervision, Kristina Todd and Christian Desouza. According to Todd, Desouza aggressively grabbed her. Todd immediately told Denn about the incident, which the two briefly discussed before Todd left work that day. According to his deposition, Denn reviewed videotapes of the incident on either the day of the incident or the following day, and he checked the center's work schedules in an effort to ensure that Todd and Desouza did not work together until he could investigate further. Denn did not inform Heatherman, human resources, or Ceniceros about the incident until November 7.

At the time of the incident, CSL's written policy regarding harassment required all employees "to immediately report (orally and/or in writing) all incidents of harassment to a manager and Human Resources. Managers who are aware of

-4-

harassment or related inappropriate conduct and who fail to ensure suitable corrective action is taken are subject to corrective action, or termination."

CSL terminated Denn's employment on November 8. The termination paperwork stated that Denn's failure to report the Todd-Desouza incident was the primary basis for his firing. The paperwork also listed several previous corrective actions that the company had taken against Denn. Heatherman and two members of human resources, one of whom was a male, participated in the termination decision. At some point following the termination of Denn's employment, Todd overheard Brandi Robinson, a trainee manager at CSL, remark to Ceniceros, "Isn't it nice that all of the testosterone is gone so that we don't have to deal with it anymore[?]" The employee hired to replace Denn was male.

Denn sued CSL in Missouri state court under two sections of the MHRA. First, he claimed that CSL had discriminated against him based on his sex. *See* Mo. Rev. Stat. § 213.055. Second, Denn claimed that his final warning and eventual firing constituted unlawful retaliation for his complaint to CSL's human resources department regarding Heatherman's conduct towards him. *See* Mo. Rev. Stat. § 213.070. CSL removed the case to federal district court based on diversity of citizenship. *See* 28 U.S.C. § 1332.

In support of his claims, Denn submitted his own deposition as well as the depositions of two other male CSL employees, Michael Carter and Kenneth Lain. Denn also submitted an affidavit from Todd, but the district court subsequently excluded major portions of this document after a second affidavit from Todd explained that various statements in the first affidavit exceeded her personal knowledge. Based on the remaining evidence, the district court granted CSL's motion for summary judgment on both of Denn's claims. Denn now appeals.

II.

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court considering a motion for summary judgment must view the evidence and inferences that reasonably may be drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

A.

The MHRA prohibits an employer from discriminating against an employee on the basis of that employee's sex. Mo. Rev. Stat. § 213.055.1(1)(a). In order to prevail in a suit under this provision, a plaintiff must demonstrate that (1) he suffered an adverse employment action; (2) his sex was a contributing factor in that adverse action; and (3) he incurred damages as a direct result. *See Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 820 (Mo. 2007). With respect to the second element, the Missouri Supreme Court has recognized that the "contributing factor" standard, which stems from the MHRA's prohibition of "*any* unfair treatment," is less rigorous than the "motivating factor" standard employed in federal discrimination cases under Title VII. *Id.* at 819. This distinction has led Missouri to abandon the *McDonnell Douglas* burden-shifting analysis applied in federal cases. *Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 383 (Mo. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Instead, if "consideration of [a] protected characteristic[] contributed to the unfair treatment, that is sufficient." *Daugherty*, 231 S.W.3d at 819. Although Denn points to various items in the record to support his discrimination claim, none of this evidence demonstrates a genuine issue of material

-6-

fact as to whether Denn's sex was a contributing factor to CSL's decision to take action against him.

Denn acknowledges that CSL provided non-sex-related reasons for his discipline and the eventual termination of his employment. Nonetheless, Denn argues that the evidence created a genuine issue of material fact regarding whether these reasons lack credibility. Although the MHRA does not require an employee to show that an employer's stated reasons for taking adverse action were pretextual, evidence undermining the credibility of those reasons can give rise to a factual issue as to whether a discriminatory reason was a contributing factor to an employer's conduct. *Lomax v. DaimlerChrysler Corp.*, 243 S.W.3d 474, 483 (Mo. Ct. App. 2007). According to Denn, CSL's explanation for why he received repeated disciplinary warnings lacks credibility because Denn completed more procedures, hiring, and facility work than his female counterparts. None of the warnings Denn received, however, stated that Denn was performing deficiently in any of these areas. Instead, Denn's verbal and written warnings cited various other shortcomings, including (1) his inappropriate disclosure of confidential information; (2) his failure to manage workflow, administer corrective actions, and build relationships among the employees he managed; (3) his inability to effectively delegate, prioritize, and complete assigned tasks; and (4) his failure to report promptly relevant information to his peers and superiors. Denn protests that these warnings resulted from Heatherman's animosity towards him, but he does not deny that he also received discipline from Shane Kennedy, a male supervisor. Denn also offers no evidence to rebut CSL's documentation of specific occasions in which he performed deficiently. To the contrary, the record includes instances in which Denn acknowledged the need to improve his performance. Based on this evidence, we conclude that Denn has failed to show a genuine issue of material fact regarding the credibility of his written warnings.

-7-

Similarly, Denn's version of the events immediately preceding his firing fails to create a genuine issue of material fact regarding the credibility of CSL's stated basis for terminating his employment. Denn does not dispute that he did not report the Todd-Desouza incident until eight days after it occurred. Nor does he dispute that this delay contravened both CSL's written policy requiring immediate reporting of such incidents and a written warning he had received just days before the incident regarding the timely elevation of such issues. Instead, Denn argues that his failure to report this incident could not have been the basis for CSL's decision to fire him because Denn was following a verbal instruction from human resources to investigate these types of occurrences prior to reporting them. The record, however, does not support Denn's version of the facts. Denn's deposition testimony states only that, on prior occasions when he had reported such issues, human resources had instructed him to investigate the incident further. At no point does he state that human resources told him to conduct this investigation *prior to* reporting the incident. To the contrary, Denn admitted in his deposition that by failing to report the incident, he was "skipping [a] step" in CSL's policies based on his determination that conducting his own investigation would expedite the process.[2] These statements support, rather than undermine, CSL's contention that it lawfully fired Denn for violating company policy after he had received a final written warning. Because Denn admitted that he failed to comply with CSL's policies, no genuine issue of material fact remained with respect to the credibility of CSL's assertion that Denn's failure was the basis for the termination of his employment.

In addition, Denn argues that summary judgment was inappropriate because the evidence showed that CSL treated him unfavorably relative to similarly situated female employees. Missouri courts do not require a plaintiff to present evidence of

---

[2] In any event, the record undermines Denn's assertion that his investigation caused his eight-day reporting delay. The only investigatory effort that Denn described in his deposition was his review of videotapes on either the day of the incident or the following day.

similarly situated employees in order to overcome summary judgment, but this type of evidence can give rise to a factual issue regarding whether a discriminatory reason was a contributing factor to an employer's conduct. *Holmes v. Kansas City Mo. Bd. of Police Comm'rs ex rel. Its Members*, 364 S.W.3d 615, 627 (Mo. Ct. App. 2012). "Employees are similarly situated if they are accused of 'similar conduct and are disciplined in different ways.'" *Jain v. CVS Pharmacy, Inc.*, 779 F.3d 753, 759 (8th Cir. 2015) (quoting *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 873 (Mo. Ct. App. 2009)). Denn argues that Ceniceros, who also worked as an assistant center manager, was a similarly situated female employee. The fact that Heatherman never disciplined Ceniceros, Denn contends, requires an inference of sex discrimination. Denn provides no evidence, however, that Ceniceros's performance as an assistant center manager suffered from the same deficiencies as Denn's performance. Nothing in the record suggests that Ceniceros consistently failed to complete assigned tasks, report issues to supervisors, or promptly administer corrective actions to subordinates. Denn argues that Ceniceros performed fewer procedures and contributed less to hiring and facility maintenance, but, as explained above, these tasks were not areas in which Denn received negative feedback. Because the record does not show that Denn and Ceniceros engaged in "similar conduct," Denn's argument that Heatherman did not discipline Ceniceros cannot give rise to a genuine issue of material fact as to whether CSL treated Denn less favorably than similarly situated female employees. *See Jain*, 779 F.3d at 759.

Similarly, Denn's attempt to compare himself to Heatherman fails to create a factual issue sufficient to overcome summary judgment. Denn alludes to a prior harassment complaint that Heatherman failed to report, but no admissible evidence indicates that Heatherman did not report this incident to human resources.[3]

---

[3] Denn presents two potential pieces of evidence supporting this assertion, but neither is admissible. First, in her first affidavit, Kristina Todd stated that in September 2012 she made a harassment complaint to Heatherman and that Heatherman took no action to correct the behavior underlying this complaint.

-9-

Moreover, even if Heatherman did fail to report a similar incident, no evidence shows that Heatherman's superiors were aware of this failure but declined to punish her. Finally, Heatherman would not necessarily have deserved the same punishment as Denn for any such failure because no evidence suggests that Heatherman was on "final warning" when this previous instance of harassment occurred. As with Ceniceros, because Heatherman was not disciplined less severely than Denn for engaging in similar conduct, the district court correctly determined that no genuine issue of material fact remained as to whether CSL treated Denn unfavorably relative to similarly situated employees.

Denn also argues that Brandi Robinson's statement to Ceniceros following Denn's firing represents evidence of sex discrimination. Admittedly, this statement demonstrates that one or more of Denn's peers may have harbored a bias against him based on his sex. However, the statement is not direct evidence of discrimination because neither Robinson nor Ceniceros was involved in the decision to fire Denn. *See Daugherty*, 231 S.W.3d at 818 n.4 ("Statements . . . are not considered direct evidence if they are unrelated to the decisional process."). Robinson's comment also

_____

However, the district court subsequently excluded much of this first affidavit due to Todd's admission in a second affidavit that the affidavit's averments exceeded her personal knowledge. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge . . . ."). Although Denn argues that this exclusion was improper, we disagree. *See Ward v. Int'l Paper Co.*, 509 F.3d 457, 462 (8th Cir. 2007) (holding that district court properly excluded statements in affidavits for which affiants lacked personal knowledge). In her second affidavit, Todd stated only that she was not aware of any action that Heatherman took following this first complaint. Second, Denn stated in his deposition that Heatherman "failed to do anything" when this prior incident was brought to her attention. Elsewhere in his deposition and in his brief, however, Denn makes clear that he learned of Heatherman's alleged inaction through his conversation with Todd. Like Todd's statement in her first affidavit, therefore, Denn's statement is inadmissible because it is not based on either Todd's or Denn's personal knowledge. *See id.*

-10-

does not represent indirect evidence of discrimination because no reasonable inference links this statement to Denn's discipline or firing. *See id.* at 818. Neither Heatherman nor anyone in human resources could have considered Robinson's statement when deciding to take action against Denn, and no evidence indicates that the comment was emblematic of similar sentiments shared by those decision makers. Without facts connecting this comment, made by one of Denn's peers, to CSL's decision to fire Denn, the statement does not give rise to a genuine issue of material fact regarding Denn's discrimination claim. *Cf. Fast v. Southern Union Co., Inc.*, 149 F.3d 885 (8th Cir. 1998) (finding that comments by non-decision maker provided circumstantial evidence of discrimination where other evidence indicated that the comments influenced the decision to fire the plaintiff); *Cox v. Kansas City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 126 (Mo. 2015) (finding that comments by other high-level executives provided indirect evidence that employee's firing was part of a company-wide policy of age discrimination).

Finally, Denn argues that evidence of other instances of discrimination against CSL's male employees rendered summary judgment improper. Missouri courts have recognized that so-called "me too" evidence of other discrimination victims is relevant where the plaintiff shows "that he and others were treated similarly by being disciplined or fired and that the dominant common factor between himself and the others who were disciplined or fired is their membership in the protected group." *Cox*, 473 S.W.3d at 120. The "me too" evidence Denn presents, however, fails to give rise to a genuine issue of material fact. Although former CSL employee Michael Carter stated that he felt that he was targeted by female superiors, this testimony did not demonstrate that Carter was "treated similarly" to Denn because Carter did not specify the nature of this treatment or whether it involved the type of discipline Denn received. *See id.* at 118. Furthermore, neither Carter nor Denn's other witness, Kenneth Lain, was fired by CSL. Therefore, the only evidence that other males were "treated similarly" to Denn was Lain's statement that he, like Denn, received multiple written warnings from Rebecca Heatherman. The fact that Heatherman disciplined

-11-

both men may be relevant under Missouri law, but standing alone this "mere 'scintilla of evidence' is insufficient to defeat summary judgment" on Denn's discrimination claim.  *See Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010) (quoting *Anderson*, 477 U.S. at 256)).

Because Denn supplied no evidence giving rise to a genuine issue of material fact as to whether CSL considered his sex when disciplining and ultimately firing him, the district court properly granted CSL summary judgment on Denn's discrimination claim.

### B.

Denn also argues on appeal that the district court erred by granting CSL summary judgment on his retaliation claim.  *See* Mo. Rev. Stat § 213.070.  To establish a *prima facie* case of retaliation under the MHRA, a plaintiff must prove (1) he complained of discrimination; (2) the employer took adverse action against him; and (3) a causal relationship existed between the complaint and the adverse action.  *McCrainey v. Kansas City Mo. Sch. Dist.*, 337 S.W.3d 746, 753 (Mo. Ct. App. 2011).  With respect to the third element, Missouri courts have recognized that a "causal relationship" exists when retaliation was a "contributing factor" to the adverse action. *Wallace v. DTG Operations, Inc.*, 563 F.3d 357, 360 (8th Cir. 2009) (citing *Hill v. Ford Motor Co.*, 277 S.W.3d 659 (Mo. 2009)).

The parties do not dispute that the evidence is sufficient to establish the first two elements of retaliation. Denn complained to human resources about sex discrimination on August 17, 2012, and CSL took adverse actions against Denn when it provided him with a final written warning on August 22, 2012 and when it terminated his employment on November 8, 2012.  With respect to the third element, Denn claims that the temporal proximity between his complaint and CSL's adverse actions creates a genuine issue of material fact regarding whether his complaint

contributed to CSL's decision to take those actions. In order to survive summary judgment on a retaliation claim, however, a plaintiff generally must present "*more than a temporal connection* between protected activity and an adverse employment action." *Williams*, 281 S.W.3d at 869 (emphasis added) (quoting *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 715-16 (8th Cir.2000)). Denn's retaliation claim cannot overcome summary judgment because he has failed to provide any evidence that his discrimination complaint was a contributing factor to either his final warning or the eventual termination of his employment.

First, although Denn received his final written warning shortly after he complained to human resources, Heatherman had sought approval to deliver this warning nearly a month before Denn's complaint, and her request cited performance issues dating back to February 2012. Furthermore, human resources already had reviewed the warning and suggested revisions by the time Denn complained of discrimination. In light of these facts, we agree with the district court that Denn's receipt of a final warning days after his complaint was a "mere coincidence of timing" that fails to give rise to a factual issue regarding whether the complaint was a factor contributing to the delivery of this warning. *See Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002) (quoting *Nelson v. J.C. Penney Co.*, 75 F.3d 343, 346-47 (8th Cir. 1996)).

Denn also failed to show that his discrimination complaint contributed to CSL's decision to terminate his employment. Even if we accept Denn's argument that we should discount the leave of absence he took from September 15, 2012 until October 14, 2012, more than seven weeks of work separated Denn's complaint and his eventual firing. This gap in time "weakens the inference of retaliation that arises when a retaliatory act occurs shortly after a complaint." *See Shanklin v. Fitzgerald*, 397 F.3d 596, 604 (8th Cir. 2005) (quoting *Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 989 (8th Cir. 1999)). Furthermore, without additional evidence linking Denn's complaint to CSL's decision to fire him, any temporal connection between

these events is insufficient to raise a genuine issue of material fact. *See Williams*, 281 S.W.3d at 869. As explained above, Denn has failed to undermine CSL's lawful explanation for why the company terminated his employment. Because "filing a complaint does not clothe [a plaintiff] with immunity for past and present inadequacies," Denn's poor performance overwhelms any temporal relationship between his discrimination complaint and subsequent firing. *See Shanklin*, 397 F.3d at 604 (quoting *Kneibert v. Thomson Newspapers, Mich., Inc.*, 129 F.3d 444, 455 (8th Cir. 1997)).

Denn has failed to point to any evidence showing that his discrimination complaint was a "contributing factor" to any adverse action taken by CSL. *See Wallace*, 563 F.3d at 360. Accordingly, no genuine issue of material fact remained as to whether any "causal relationship" exists between these two events. *See id.*

### III.

For the foregoing reasons, we affirm the district court's grant of summary judgment to CSL on both of Denn's claims under the MHRA.

_____