# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-2283

_____

Keith Jones

*Plaintiff - Appellant*

v.

City of St. Louis, Missouri, a Municipal Corporation and a political subdivision of the State of Missouri

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 14, 2016
Filed: June 9, 2016

_____

Before WOLLMAN, MELLOY, and COLLOTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Keith Jones filed suit against his employer, the City of St. Louis (City), alleging that it had discriminated against him based on his race and had retaliated against him for filing charges of unlawful discrimination, in violation of Title VII of

the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. We affirm the district court's[1] grant of summary judgment in favor of the City.

## I. Background

Jones is an African-American man who has diabetes. He has worked as an electrician for the City's Facilities Management Division since March 2000. Jones's position requires that he periodically be on call and respond to emergencies that occur after normal operating hours.

In March 2009, Jones filed a charge of discrimination with the Missouri Commission on Human Rights and the Equal Employment Opportunity Commission (EEOC). He alleged that the City "charged [him] with stealing time," that it threatened to terminate him, and that it took these actions based on Jones's race.

The facts relating to the "stealing time" accusation are as follows. In early 2009, the City completed a pretermination investigation of Jones for an incident that occurred in December 2008. Jones submitted an after-hours-emergency-call form indicating that, on December 23, 2008, he had responded to an after-hours emergency call from the fire department for a power outage in its engine house. He indicated on the form that he had called the utility company to resolve the issue. The following Monday, Jones brought the form to the fire chief, who signed it. Jones also submitted a time sheet claiming that he had worked on December 23 from 6:35 p.m. to 7:00 p.m. The engine house, however, had not experienced a power outage on December 23.

After a pretermination investigation, the president of the Board of Public Service determined that Jones should not be terminated because there was insufficient

---

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

evidence to show that he had deliberately falsified records or failed to respond to the emergency call. The engine house had experienced a power outage on December 24 from 4:30 p.m. to 5:30 p.m., to which Jones had apparently responded. Jones testified in his deposition that he personally went to the engine house and spoke to a utility worker, who told him that power had been restored. Jones explained that although he saw people inside the engine house, no one answered when he knocked on the door, so he left. The president authorized a written reprimand of Jones for failure to comply with the department's emergency-call sign-off procedure. The written reprimand was ultimately withdrawn, however, for it could not be determined whether Jones had received a copy of the department's emergency-call sign-off policy.

The pretermination investigation and subsequent reprimand caused Jones to suffer significant mental and emotional distress. Accordingly, Jones went on paid medical leave from May 1, 2009, to July 7, 2009. When he returned to work, Jones presented a statement from his psychologist that released him to return to work without restriction. The construction maintenance manager refused to accept the statement, telling Jones that he would have to present a statement from a "real doctor." That same day, Jones lost consciousness during a meeting about his performance rating and was taken to the hospital. Jones eventually returned to work in mid-July after he presented a written work-release statement from his physician.

Jones was given an overall performance rating of unsuccessful for the rating period ending on June 6, 2009. He was also rated as unsuccessful in judgment, work quality, safety, and work habits. The written evaluation identified the following five incidents in support of the unsuccessful ratings. First, Jones failed to gain access to the engine house when he responded to the December 24 emergency call and thus failed to check the electrical system to ensure that it was functioning safely and properly. Second, Jones received an emergency call at 10:45 p.m. on December 21, but failed to relay the call to the proper technician until 3:30 a.m. on December 22. Third, Jones failed to test the emergency generator at the fire department headquarters

at 7:00 a.m. on December 24, as required. Fourth, when Jones was assigned to shut off power for the elevators at the Gateway Transportation Center, he instead shut off power for the entire building. Fifth, a compressor at the municipal garage did not function because Jones had failed to wire it properly.

When Jones returned to work in July 2009, the City placed him on a thirteen-week mandatory improvement plan and reduced his pay during that period. Jones appealed his unsuccessful rating to the director of personnel, who changed the work-habits rating to successful, sustained the overall rating and the ratings in the other categories, and determined that the mandatory improvement plan would remain in place until October 30, 2009. Jones's pay was reinstated after he completed the mandatory improvement plan.

Jones filed an amended charge of discrimination with the Missouri Commission on Human Rights and the EEOC on March 5, 2010. He claimed that his pay was reduced and that his psychologist's note was rejected because of his race. In the space provided for the charging party to list the date on which the discrimination took place, Jones wrote March 5, 2009, and checked the box indicating "continuing action."

On July 27, 2010, Jones caused a car accident when he lost consciousness while driving a City-owned vehicle. Although Jones attributed the spell to heat exhaustion, his physician's notes indicated that it may have been caused by hypoglycemia. At the request of the commissioner, the director of personnel authorized a fitness-for-duty examination for Jones to determine whether he was able to perform the functions of an electrician. Jones was evaluated by Karen Shockley, M.D., who concluded that the car accident likely involved a hypoglycemic episode. Dr. Shockley recommended that Jones be disallowed from driving a commercial vehicle, operating a bucket truck, or working alone. The commissioner then assigned Jones to the warehouse, where he would rarely drive or work alone.

In February and August 2011, Jones presented letters from his treating physicians that indicated that Jones could operate motor vehicles and work as an electrician. The commissioner thereafter sought authorization for a second fitness-for-duty examination, which was granted. Jones successfully appealed to the City's Civil Service Commission, which concluded that Jones was not required to attend the examination because "the Appointing Authority had no authority to direct an employee to submit to said fitness for duty examination." Jones was then allowed to resume full electrician duties.

Jones filed suit against the City in May 2012. After the district court dismissed the suit for failure to state a claim, we reversed and remanded for further proceedings on Jones's Title VII claims of race discrimination and retaliation. Jones v. City of St. Louis, Mo., 555 F. App'x 641 (8th Cir. 2014) (per curiam). Jones filed an amended complaint alleging the three counts that are discussed more fully below. The district court granted the City's motion for summary judgment and dismissed the complaint with prejudice. On appeal, Jones argues that the district court erred in granting summary judgment on his race-discrimination claims; he does not challenge the adverse grant of summary judgment on his retaliation claims.

## II. Discussion

We review *de novo* the district court's grant of summary judgment, viewing the evidence in the light most favorable to the nonmoving party. Torgerson v. City of Rochester, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (en banc). Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Because Jones has presented no direct evidence of discrimination, we analyze his claims under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Macklin v. FMC Transp., Inc., 815 F.3d 425, 427 (8th

Cir. 2016). To establish a *prima facie* case of race discrimination, an employee must show that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination, *e.g.*, he was treated differently than similarly situated employees who were not members of his protected class. Id. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Id. Once the employer proffers such a reason, the burden then shifts back to the employee to show that "the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

## A. Count I

In count I, Jones alleged that the City discriminated against him when it sought to discharge and reprimand him for the incident involving the December 2008 emergency-call response to the fire department's engine house and when, upon his return from medical leave, the City refused to accept the work release from his treating psychologist. Jones claimed that the attempt to discharge and reprimand him caused him emotional distress, which required him to take medical leave from May to July 2009. According to Jones, the reduction of his accrued medical leave constituted an economic loss because the City would have compensated him for any unused medical leave upon separation. The district court concluded that Jones failed to set forth a *prima facie* case of race discrimination because he did not identify an adverse employment action arising from these facts. We agree.

Jones argues that the depletion of his accrued medical leave constitutes an adverse employment action. "An adverse employment action is defined as a tangible change in working conditions that produces a material employment disadvantage,

including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs., 728 F.3d 800, 804-05 (8th Cir. 2013). The City did not change Jones's working conditions following its pretermination investigation. It did not terminate Jones's employment, cut his pay or benefits, or change his job responsibilities. The City approved Jones's request for medical leave and allowed him to return to his position in mid-July after he presented a work-release statement from his physician. See Baucom v. Holiday Cos., 428 F.3d 764, 767 (8th Cir. 2005) (concluding that a reduction in work hours did not constitute an adverse employment action where the employee failed to show that the employer decreased the hours instead of the employee "himself decreasing them as a result of his voluntarily taking vacation and sick leave"). In a word, the City provided Jones a favorable employment benefit that Jones took advantage of. Jones has not argued that taking medical leave is tantamount to being constructively discharged, nor could he succeed on such an argument on this evidentiary record. See Jackman, 728 F.3d at 805 (rejecting the employee's arguments that the depletion of medical leave constituted an adverse employment action and that "the depleted leave situation amounts to the same thing as a constructive discharge"). Because Jones has not shown that he suffered an adverse employment action, he has failed to set forth a *prima facie* case of race discrimination, and so the district court properly granted summary judgment on count I.

## B. Count II

In count II, Jones alleged that the City discriminated against him when it rated his overall performance as unsuccessful, placed him on the mandatory improvement plan, and temporarily reduced his pay. At summary judgment, Jones argued that these circumstances give rise to an inference of discrimination because the City treated him differently than two similarly situated Caucasian employees, an electrician and an

HVAC mechanic. According to Jones's affidavit, the electrician failed to properly assess and correct an outdoor lighting problem at the Gateway Transportation Center, despite working on it for weeks. Jones also presented evidence that the HVAC mechanic routinely failed to respond to emergency calls for service. Jones alleged that neither the electrician nor the HVAC mechanic was disciplined or given an unsatisfactory performance rating.

The district court concluded that Jones failed to present evidence sufficient to establish that the electrician or the HVAC mechanic were similarly situated to him. The district court determined that the electrician's failure to properly address the outdoor lighting problem was a single failure that was dissimilar to any of the five issues identified in Jones's performance evaluation. The district court concluded that the HVAC mechanic's repeated failure in one area—responding to emergency calls—was different from Jones's alleged failure in five areas. "Given these differences, it cannot be inferred that the disciplinary actions taken against Jones occurred because of racial discrimination." D. Ct. Order of May 11, 2015, at 9. Jones has not identified any error in the district court's analysis, and we find none, for Jones has failed to set forth evidence sufficient to show that he and the comparators were "involved in or accused of the same or similar conduct and [were] disciplined in different ways." Chappell v. Bilco Co., 675 F.3d 1110, 1118 (8th Cir. 2012) (quoting Williams v. Ford Motor Co., 14 F.3d 1305, 1309 (8th Cir. 1994) (citing Boner v. Bd. of Comm'rs, 675 F.2d 693, 697 (8th Cir. 1982))). Accordingly, Jones failed to establish a *prima facie* case of race discrimination, and the district court properly granted summary judgment on count II.

## C. Count III

In count III, Jones alleged that the City discriminated against him after his July 2010 car accident by requiring fitness-for-duty examinations, assigning him to work in the warehouse, and rejecting his physician's statement that he could return to work

without restriction.  In granting summary judgment in favor of the City, the district court concluded that Jones had failed to exhaust his administrative remedies because he did not file a charge with the EEOC related to the allegations set forth in count III.

Before a plaintiff can bring a lawsuit alleging unlawful discrimination under Title VII, he must file a timely charge with the EEOC or a state or local agency with the authority to grant or seek relief.  42 U.S.C. § 2000e-5(e)(1); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002); Richter v. Advance Auto Parts, Inc., 686 F.3d 847, 850 (8th Cir. 2012) (per curiam).  The statute sets forth the time period for filing a charge of an "unlawful employment practice," 42 U.S.C. § 2000e-5(e)(1), and the Supreme Court has rejected the argument that the term "'practice' . . . connotes an ongoing violation that can endure or recur over a period of time," Morgan, 536 U.S. at 110-11.  In doing so, the Court found "no indication that the term 'practice' converts related discrete acts into a single unlawful practice for the purposes of timely filing."  Id. at 111.  "Each incident of discrimination . . . constitutes a separate actionable 'unlawful employment practice.'"  Id. at 114.

Jones argues that the allegations set forth in count III are "like or reasonably related to" the allegations set forth in his March 2010 amended EEOC charge and thus fall within the judicial exception to the exhaustion doctrine.  See Wedow v. City of Kansas City, Mo., 442 F.3d 661, 672-73 (8th Cir. 2006).  He claims that it was unnecessary for him to file a charge for the acts set forth in count III because the allegations "ar[ose] from an act of the same nature as that alleged in the amended administrative charge" and because he checked the "continuing action" box on the EEOC form.  Appellant's Br. 21.  In the amended EEOC charge, Jones made the following allegations:

> I had been returned to work on 07/13/09.  When I presented my return to work letter, I was informed that the statement was insufficient because the doctor did not state whether or not I had restrictions.  On

07/14/09[,] I was allowed to work my shift after presenting a revised doctor's statement. At the end of the day[,] I was told that I was not allowed to return to work until I got a release from my doctor who was treating my disability.

Although we recognize a judicial exception to the exhaustion doctrine, that exception is not nearly as broad as Jones would have it, and it does not apply here. See Wedow, 442 F.3d at 672-73 (recognizing a judicial exception to the exhaustion doctrine and noting that this court has "considerably narrowed our view of what is 'like or reasonably related' to the originally filed EEOC allegations"). Jones's amended EEOC charge describes his return to work in July 2009, following three months of paid medical leave for emotional distress. The City rejected the statement from his psychologist and required a statement from the physician who treated Jones's diabetes. Count III, however, describes his return to work in July 2010 after he had lost consciousness and caused an accident in a City-owned vehicle. The City rejected Jones's physician's statement and sought a follow-up fitness-for-duty examination. The only common element of these two discrete acts is that the City rejected statements from health care providers. Given the different circumstances surrounding the City's rejection of the statements and the amount of time that had elapsed between these two rejections, we conclude that Jones was required to file a separate charge of discrimination for the July 2010 incident. Because he failed to do so, the district court properly granted summary judgment on count III.

The judgment is affirmed.

_____