United States Court of Appeals

For the Eighth Circuit

_____

No. 21-3658
_____

Phyllis Tisdell

*Plaintiff - Appellant*

v.

Denis McDonough, Secretary of the
United States Department of Veterans' Affairs

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Western District of Missouri
_____

Submitted: November 16, 2022
Filed: March 14, 2023
[Unpublished]
_____

Before COLLOTON, SHEPHERD, and GRASZ, Circuit Judges.
_____

PER CURIAM.

Phyllis Tisdell asserted claims under Title VII against the Secretary of the
Department of Veterans Affairs arising out of her employment with the VA. The

district court[1] granted the Secretary's motion for summary judgment after concluding Tisdell did not establish a prima facie case for any of her Title VII claims. We affirm.

## I. Background

In 2000, Tisdell began working as a Coder with the VA in Kansas City, Missouri, where she was responsible for converting medical records to numbered codes. In March 2014, Tisdell formally transitioned from a Coder to a Clinical Documentation Improvement ("CDI") Specialist—what she describes as an "advanced coding position" that she accepted "because it represented positive growth." The job switch did not result in a change in Tisdell's paygrade and benefits, but her new supervisor was Laurie Schwab.

The transition did not go smoothly. In January 2015, Tisdell filed an Equal Employment Opportunity ("EEO") complaint, though she abandoned it about a week later. Around this same time, Tisdell claims a co-worker told her that Schwab called Tisdell a "black bitch."

Sometime in March 2016, Tisdell applied for a position as a CDI Specialist with the VA in Columbia, Missouri. On March 18, 2016, Schwab assigned Tisdell and two other employees to work ten hours of mandatory overtime to assist with a coding backlog. Notably, the entire coding section in the Kansas City office was placed on mandatory overtime for the same reason. On the same day as the overtime assignment, Schwab also sent Tisdell a memorandum detailing her failure to follow instructions and her low productivity. While Tisdell seemed to agree her productivity was not where it should be, she thought Schwab issued the memorandum in retaliation for Tisdell working a second coding job. The memorandum did not result in disciplinary action.

---

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

On March 18, 2016, Tisdell emailed Schwab to explain she was unable to work ten hours of overtime because of her second job. About one week later, the Kansas City office announced it would temporarily suspend the CDI program because of the coding backlog. CDI employees in the VA's Kansas City office, including Tisdell, were reassigned to perform coding duties starting on April 11, 2016. Those employees' paygrades and duty locations were unaffected.

On or around April 14, 2016, Tisdell accepted a CDI Specialist position with the VA in Columbia, Missouri. The following month, she formally made a lateral transfer to that office. Her paygrade and benefits remained the same, but her locality pay was lower.

In July 2016, Tisdell filed a second EEO complaint. In March 2019, the VA issued its final agency decision in response, concluding there was no violation of Title VII. About three months later, Tisdell sued the Secretary of the VA, asserting claims under Title VII for hostile work environment, race discrimination, and retaliation. *See* 42 U.S.C. §§ 2000e to 2000e–17. After full briefing, the district court granted the Secretary's motion for summary judgment because Tisdell failed to set forth a prima facie case. Tisdell timely appealed.

## II. Analysis

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We review the district court's grant of summary judgment de novo, viewing the facts and inferences in the light most favorable to the nonmoving party." *Said v. Mayo Clinic*, 44 F.4th 1142, 1147 (8th Cir. 2022) (cleaned up) (quoting *Walsh v. Alpha & Omega USA, Inc.*, 39 F.4th 1078, 1082 (8th Cir. 2022)). Nonetheless, the party opposing a proper motion for summary judgment "must set forth specific facts in the record showing that there is a genuine issue for trial." *Denn v. CSL Plasma, Inc.*, 816 F.3d 1027, 1032 (8th Cir. 2016)

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)); *see also* Fed. R. Civ. P. 56(c)(1)(A), (e).

The parties agree Tisdell's Title VII claims are analyzed under the framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under *McDonnell Douglas*, the plaintiff has the initial burden to establish a prima facie case for each claim." *Watson v. McDonough*, 996 F.3d 850, 854 (8th Cir. 2021). Tisdell argues the district court erred by concluding she failed to establish a prima facie case for her Title VII claims.[2]

## A. Hostile Work Environment

We begin with Tisdell's Title VII claim for hostile work environment. To establish a prima facie case for hostile work environment under Title VII, Tisdell must show: "(1) she is a member of the class of people protected by Title VII, (2) she was subject to unwelcome harassment, (3) the harassment resulted from her membership in the protected class, and (4) the harassment was severe enough to affect the terms, conditions, or privileges of her employment." *Watson*, 996 F.3d at 856 (alteration omitted) (quoting *Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799, 806 (8th Cir. 2019)).

The Secretary argues Tisdell fails to point to evidence for the third and fourth elements of a claim for hostile work environment. In response, the only relevant evidence Tisdell cites is her own claim that another employee told her that Schwab referred to Tisdell using an offensive phrase. "A hostile work environment exists when the workplace is dominated by racial slurs, but not when the offensive conduct consists of offhand comments and isolated incidents." *Bainbridge v. Loffredo*

---

[2]The argument section of Tisdell's brief on appeal does not contain citations to the parts of the record on which she relies. *See* Fed. R. App. P. 28(a)(8)(A). This makes it difficult for Tisdell to carry her burden to establish a prima facie case for any of her Title VII claims. Nonetheless, we attempt to connect Tisdell's arguments to the record.

*Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir. 2004). The alleged use of this phrase outside of her presence, while troubling, is insufficient to support a claim for hostile work environment. *See id.* at 759–60; *Ross v. Kans. City Power & Light Co.*, 293 F.3d 1041, 1050–51 (8th Cir. 2002). Thus, there is no evidence showing any harassment was severe enough to alter the terms, conditions, or privileges of Tisdell's employment. *See Watson*, 996 F.3d at 856. As such, the district court did not err.

## B. Race Discrimination

We next turn to Tisdell's claim for race discrimination under Title VII.

> To make out a prima facie case of race discrimination, a plaintiff must show: (1) she is a member of a protected class, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently).

*Id.* at 855 (internal quotation marks omitted) (quoting *Carter v. Pulaski Cnty. Special Sch. Dist.*, 956 F.3d 1055, 1058 (8th Cir. 2020)).

The only element the Secretary contests on appeal is the third: adverse employment action. "An adverse employment action is defined as a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Jones v. City of St. Louis*, 825 F.3d 476, 480 (8th Cir. 2016) (quoting *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804–05 (8th Cir. 2013)).

Tisdell points to three actions that she classifies as adverse employment actions to support her race discrimination claim: the increased workload, Schwab's

memorandum, and moving her to the CDI Specialist position but giving her "duties below her grade level." She cites no evidence in support. In any event, the record shows the temporary coding work, mandatory overtime, and elimination of the CDI program applied broadly to employees in the VA's Kansas City office and was due to staffing shortages and a backlog in coding work. And while Schwab's memorandum detailing Tisdell's failure to follow instructions and low productivity was directed to her, Tisdell seemed to concede her productivity was not up to speed. We also note that before litigation began, Tisdell claimed Schwab's memorandum was in retaliation for working for a second job—not because of her protected class. Under similar circumstances, we have concluded that a "written counseling" memorandum and "assignment of additional coding work" by the VA were "not adverse employment actions for the purposes of Title VII." *Watson*, 996 F.3d at 855. Moreover, none of the events Tisdell points to resulted in less compensation or benefits. *Jones*, 825 F.3d at 480. We discern no error in the district court's conclusion regarding Tisdell's claim for race discrimination.

## C. Retaliation

Tisdell's final claim is retaliation under Title VII. "To establish a prima facie case of retaliation, she must show that: (1) she engaged in protected conduct, (2) she suffered a materially adverse employment action, and (3) the adverse action was causally linked to the protected conduct." *Watson*, 996 F.3d at 856 (cleaned up) (quoting *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011)).

The Secretary focuses on the second element, arguing there was no materially adverse employment action. Tisdell "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and internal quotation marks omitted). To meet this standard, Tisdell first points to the VA physically moving her office space to the scanning department, where she was "given a desk with no telephone and placed away from

-6-

the other CDIs and Coders, right outside of Schwab's office." Moving Tisdell to a new workstation is a "minor change[] in working conditions that merely inconvenience[s] an employee," *Spears v. Mo. Dep't of Corr.*, 210 F.3d 850, 853 (8th Cir. 2000), and would not have dissuaded a reasonable worker from making or supporting a charge of discrimination. *See Burlington N.*, 548 U.S. at 68 ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.").

Tisdell also argues Schwab's memorandum, the increased workload, and moving her to the CDI Specialist position, but giving her "duties below her grade level," constitute adverse employment actions for the purpose of her retaliation claim. We conclude that, on this record, these instances are not adverse employment actions under *Burlington Northern*. *See Watson*, 996 F.3d at 855–56 (concluding there was "no evidence of an adverse employment action" for a Title VII retaliation claim despite the assignment of additional coding work and written counseling).

### III. Conclusion

The district court did not err by concluding Tisdell failed to set forth a prima facie case under Title VII.[3] We thus affirm the judgment of the district court.

_____

_____

[3]Tisdell asserts she has established a prima facie case for a constructive discharge claim. However, we agree with the district court that Tisdell did not establish intolerable working conditions, and the claim fails as a matter of law. *See Watson*, 996 F.3d at 856–57.