# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1552

_____

| | | |
|---|---|---|
| James A. Schierhoff, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| GlaxoSmithKline Consumer | * | |
| Healthcare, L.P., a Limited Partnership, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: December 14, 2005
Filed: April 14, 2006

_____

Before MELLOY, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

James A. Schierhoff brought an action under the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.010 *et seq.*, alleging that GlaxoSmithKline Consumer Healthcare, L.P. ("GSK"), discriminated against him on the basis of his age and physical disabilities. The district court[1] granted summary judgment for GSK. Reviewing that decision *de novo*, and considering all reasonable inferences in favor of Schierhoff as the non-movant, we affirm.

_____

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

In 2002, Schierhoff was a 48-year-old man employed by GSK as a packaging mechanic. He was terminated in April 2002. Prior to his termination, Schierhoff was absent from work frequently for various combinations of medical and personal leave. According to the memorandum that effected his termination,[2] Schierhoff used 12 weeks of Family Medical Leave during 2000 and took an additional 40 days off that same year. In 2001, and through March 11, 2002, he used 12 weeks of Family Medical Leave and was absent an additional 36 days. For the time between June 12, 2000, and March 11, 2002, Schierhoff was absent a total of 172 days, or almost 40 percent of the time. The memorandum explained that this absenteeism was the reason for Schierhoff's termination: "The Company has made numerous efforts to accommodate your personal absences. However, such absenteeism can no longer be tolerated. Your absences have impaired the operation of the Department and diminished your effectiveness to the Company. As a result, a decision has been made to terminate your employment . . . ." (Appellant's App. at 276).

Schierhoff does not quarrel with GSK's assertion that he was absent frequently, but he disputes whether this was the real reason for his termination. According to Schierhoff, in the fall of 2001, his immediate supervisor, Edward Rohowetz, commented to him, "[y]ou know, I bet you got something hurting all over your body all the time, you've had a rough life. You've done a lot of things. At any given time I bet you got something hurting on your body. You know as old and worn out as you are, why don't you just quit? You don't need the money anyway." Schierhoff understood this comment to mean that Rohowetz regarded him as "generally disabled and unable to perform [his] job," and he asserts that the comment, coupled with Rohowetz's role in his termination, demonstrates that the termination was undertaken because of Schierhoff's age or disability. In addition, Schierhoff heard from a co-worker that another manager, Vertis Thomas, once spoke about "mechanics whose

---

[2]The parties both represent that Schierhoff was terminated in April 2002, although the memorandum that purports to terminate him was dated March 11, 2002.

knees are worn out by the time they reach age 50," and said that "[t]hey should be given a chance to retire or bow out gracefully before then." Schierhoff says this comment also demonstrates a discriminatory motive on behalf of GSK.

In further support of this claim, Schierhoff points to positive performance evaluations and the lack of any warning of his upcoming termination. According to Schierhoff, GSK's policies for handling attendance problems necessitated a warning or progressive discipline rather than termination. He also notes that his absences were due to recovery from a scheduled surgery and other injuries, and argues that because the leave was taken with GSK's permission, it cannot be the reason for his termination.

Where a plaintiff relies on indirect proof of discrimination, claims of age or disability discrimination under the MHRA, like those under the federal anti-discrimination statutes, are analyzed under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1137 (8th Cir. 1999) (en banc). This framework requires that the plaintiff set forth a prima facie case in order to shift the burden of producing a legitimate, nondiscriminatory reason for the employment decision to the employer. *McDonnell Douglas Corp.*, 411 U.S. at 802-04; *see also West v. Conopco Corp.,* 974 S.W.2d 554, 556-57 (Mo. Ct. App. 1998); *Cook v. Atoma Int'l of Am., Inc.*, 930 S.W.2d 43, 45 (Mo. Ct. App. 1996). If the employer proffers a nondiscriminatory reason, then the employee must prove that the reason is a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. Summary judgment is appropriate where the moving party has demonstrated that even with all facts and inferences construed in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

To establish a prima facie case of age discrimination under the MHRA, a plaintiff must show that he is a member of a protected age group, that he met applicable job qualifications, that he was discharged, and that he was subsequently replaced by a younger employee. *See Calder v. TCI Cablevision of Mo., Inc.*, 298 F.3d 723, 729 (8th Cir. 2002). To establish discrimination on the basis of disability, a plaintiff must demonstrate that he is disabled and can perform his job with or without reasonable accommodation, that he was discharged because of his disability, and that there is evidence from which a jury could infer that his protected status was a factor in the discharge. *Devor v. Blue Cross & Blue Shield of Kansas City,* 943 S.W.2d 662, 665-66 (Mo. Ct. App. 1997).

The district court found that Schierhoff had not established a prima facie case that his termination was the result of either age or disability discrimination. Although it is undisputed that Schierhoff was a member of a protected age group and that he was discharged, the court found that he had not presented sufficient evidence that he was performing his job at the level of GSK's legitimate expectations or that he was replaced by a younger employee. With regard to the disability discrimination claim, the district court determined that Schierhoff had not shown that he was "disabled" or "regarded as disabled" within the meaning of the MHRA, and that he had not demonstrated that he was able to perform his job.

Schierhoff argues that the district court's reasoning was flawed because it considered only the *McDonnell Douglas* burden-shifting analysis. He contends that he presented "direct evidence" that an illegitimate motive had infected GSK's decision to terminate him. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 278-79 (1989) (O'Connor, J., concurring in the judgment). As Schierhoff notes, a plaintiff in an employment discrimination case under the MHRA may avoid summary judgment by following the *McDonnell Douglas* framework *or* by presenting direct evidence of discrimination. *West*, 974 S.W.2d at 556; *see Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004). Direct evidence in this context must be strong enough to

show "a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the employment decision. *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir. 1997) (internal quotations omitted) (alteration in original).

Schierhoff contends that the aforementioned statement by supervisor Rohowetz constitutes direct evidence of discriminatory intent. He asserts that Rohowetz was a decisionmaker in connection with the termination of Schierhoff's employment in 2002, so Rohowetz's statement in 2001 suggesting that Schierhoff should "quit" because he was "old and worn out" constitutes "direct evidence" of unlawful discrimination.

Direct evidence includes "evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude," where it is sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor. *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449 (8th Cir. 1993) (internal quotations omitted). But "stray remarks in the workplace," "statements by nondecisionmakers," and "statements by decisionmakers unrelated to the decisional process" do not constitute direct evidence. *Id*. In this case, the undisputed evidence is that Rohowetz was not involved in the decisionmaking process that led to Schieroff's termination for excessive absenteeism. GSK's human resources manager, Mary Laws, testified that the inquiry into attendance records was initiated by the plant manager, and that it was not focused on Schierhoff alone.

Schierhoff argues that a jury could infer that Rohowetz was a decisionmaker, because he gathered attendance records for the inquiry, authored the memorandum conveying the news of Schierhoff's termination, and presented the termination document to Schierhoff in a conference room. There is no evidence, however, that

Rohowetz was anything more than a messenger for the human resources manager when he communicated the decision to Schierhoff. Rohowetz, as a supervisor, did gather attendance records for use in the review, but there was no evidence that he was involved in the process of deciding whether to terminate Schierhoff based on the information contained in those records. Absent stronger evidence of a substantive role for Rohowetz in the decisionmaking process, his comment to Schierhoff about quitting his job does not amount to direct evidence of discrimination.

We further agree with the district court that Schierhoff has not generated a submissible case of discrimination under the *McDonnell Douglas* framework. As the district court correctly noted, the ability to perform one's job is an element of both age and disability discrimination. To prove age discrimination under Missouri law, Schierhoff must demonstrate that he is able to perform his job "at a level that me[ets his] employer's legitimate expectations." *See Calder*, 298 F.3d at 729 & n.2. To prove disability discrimination, he must show that he can perform his job either "with or without reasonable accommodation." *See* Mo. Rev. Stat. § 213.010(4). "[R]egular and reliable attendance is a necessary element of most jobs," *Greer v. Emerson Elec. Co.*, 185 F.3d 917, 921 (8th Cir. 1999) (internal quotations omitted), and an employee who cannot attend work cannot perform the essential functions of his job. This is true even when the absences are with the employer's permission. *See Pickens v. Soo Line R.R. Co.*, 264 F.3d 773, 777 (8th Cir. 2001) (finding that an employee could not perform the essential functions of his job, with or without accommodation, when he took advantage of the employer's permissive leave policy by choosing to "lay off" his job 29 times in a one-year period). Schierhoff's absences, which peaked at 96 days in a one-year period, are well beyond the level of non-attendance that we said in *Pickens* amounted to an inability to perform one's job.

Schierhoff argues that a jury could infer that regular attendance was not actually expected of him. But the evidence he cites – that GSK did not warn him that his absences were excessive, and that his performance evaluations in 1998, 2000, and

2001, were generally positive and did not mention his attendance problem – does not support this inference. The evaluations are merely silent on Schierhoff's absenteeism, and GSK's published policy clearly indicated that "[e]xcessive absences or tardiness" were matters that "may call for immediate discharge." (Appellant's App. at 96-97).

The judgment of the district court is affirmed.

_____