# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-1632

_____

Pamela J. Mahler

*Plaintiff - Appellant*

v.

First Dakota Title Limited Partnership, a South Dakota Domestic Limited
Partnership; Community Title, LLC, a South Dakota Domestic LLC; Dennis C.
Anderson, Individually; Shirley A. Thoelke, Individually; Dean Hoag, Jr., Individually

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: May 15, 2019
Filed: July 31, 2019

_____

Before BENTON, WOLLMAN, and GRASZ, Circuit Judges.

_____

BENTON, Circuit Judge.

Pamela J. Mahler sued her former employer—First Dakota Title Limited
Partnership and Community Title, LLC—and several of its executives—Dennis C.
Anderson, Shirley A. Thoelke, and Dean Hoag, Jr.—under Title VII of the Civil
Rights Act and the Iowa Civil Rights Act for retaliation, discrimination, and hostile

work environment. The district court[1] granted summary judgment to the defendants. ***Mahler v. First Dakota Title Ltd. P'ship***, 2018 WL 1096838 (N.D. Iowa Feb. 28, 2018). Mahler appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Community Title is a limited liability company with two members—First Dakota Title Limited Partnership and D. Hoag, LLC. Title Resource Network (TRN) is a tag line for First Dakota, Community Title, and their subsidiaries. Community Title hired Mahler in 2012 as vice president of one of the TRN umbrella companies. The next year, she was promoted to regional president, responsible for overseeing eight businesses.

In March 2014, Mahler reported vice president Charity Archer's complaint of discrimination to Dennis Anderson—First Dakota's Chief Executive Officer. A month later, Mahler reported a sexual harassment complaint to Human Resources Director Clay Rees. Mahler and Rees scheduled a mandatory workshop about the sexual harassment policy for all regional employees.

At a company conference in April, Anderson told all TRN staff that regional presidents should remain at "50,000 feet" and stay out of day-to-day office work. That fall, Archer complained that Mahler was too involved in the office's day-to-day activities, making it difficult to do her job. At Archer's request, Mahler was moved to the TRN Settlement Services office.

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

In February 2015, Anderson emailed Mahler some off-color jokes, explaining "Hopefully the following will not offend you." Mahler responded, "No offense taken and thank you I did get a good laugh out of it." Around the same time, "a lot of staff" at the TRN Settlement Services office asked to meet with Rees about Mahler. According to Rees, "[t]hey did not like the way Pam [Mahler] managed the office. They said that she micromanaged them, was always in their stuff, and they felt they couldn't do anything." Anderson reminded Mahler in March to stay at 50,000 feet and out of the day-to-day work. He also told her "to not get dragged into the office drama." Later that month, he authorized Mahler to hire one person to fill an open position. She hired two individuals.

In April, Mahler contacted a Register of Deeds about its work with a TRN company, Union County Abstract & Title. The Register of Deeds complained about quality issues. Instead of contacting Bobbi Jo Dondelinger—the regional president over the Union County office—Mahler went to one of Dondelinger's employees about these issues. Dondelinger complained to Anderson. He then sent an email to Dondelinger and Chief Technology Officer Shirley Thoelke:

> After my conversation with Bobbi Jo today it is possible that Pam may cause more problems than we will want to deal with. While I do not expect a major catastrophe to occur before I return on May 4th, I want each of you to know that you have my confidence and support to handle any issue with the Sioux City office as may be necessary, including termination.

In mid-May, Mahler reported sexual harassment to Rees on behalf of Archer. Mahler also shared her concerns with Anderson. A few days later, she called Rees to discuss the situation again. Later that month, Mahler complained of age discrimination on behalf of another employee. On June 1, Mahler met with Anderson and Thoelke. They told her to spend more time in her office, keep the door shut to avoid becoming involved in the day-to-day activities, and to follow the chain of

command. Mahler claims Anderson also accused her of acting like a tyrant. Explaining that Mahler "tends to embellish," Thoelke called Archer the next day to verify what Mahler said. Shortly after, Thoelke asked Archer to keep an eye on Mahler and let her know if Mahler continued inserting herself.

On June 8, Mahler told Rees about another sexual harassment complaint by Archer. Two days later, Mahler met with Reese to reiterate Archer's complaints, adding a complaint of unequal pay on behalf of two female employees.

On June 11, vice president Aaron Hansen asked an employee to come to the TRN Settlement Services office for the day. The employee called Mahler, relayed what Hansen said, and asked if she had to come to the office. Contradicting Hansen, Mahler said she did not need to come in. On June 15, Anderson terminated Mahler, replacing her with Dondelinger.

Mahler sued First Dakota, Community Title, and three of its executives, alleging retaliation, discrimination, and hostile work environment in violation of Title VII, 42 U.S.C. §§ 2000e–2, 2000e–3, and the Iowa Civil Rights Act (ICRA), Iowa Code §§ 216.6, 216.11. The district court granted summary judgment to the defendants. "This court reviews a district court's grant of summary judgment de novo, viewing all evidence and all reasonable inferences most favorably to the non-moving party, if there is a genuine dispute as to those facts." *Young-Losee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 911 (8th Cir. 2011), *citing Scott v. Harris*, 550 U.S. 372, 380 (2007). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. **Fed. R. Civ. P. 56(a)**.

II.

Title VII and the Iowa Civil Rights Act (ICRA) prohibit employers from retaliating against employees for engaging in protected conduct. *See* **42 U.S.C.**

-4-

**§ 2000e–3(a)**; **Iowa Code § 216.11**.  This court analyzes Mahler's ICRA retaliation claim under the same method as her federal claim.  *Young-Losee*, 631 F.3d at 912. To defeat summary judgment, Mahler must offer direct evidence of retaliation or create an inference of it under the *McDonnell Douglas* burden-shifting framework. *Id.*

Mahler contends there is direct evidence of retaliation.  Direct evidence is "evidence that demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse action was in retaliation for the protected conduct."  *Id.*, *citing* ***Burlington N. & Sante Fe Ry. Co. v. White***, 548 U.S. 53, 57, 68 (2006).  "[W]hether evidence is direct depends on its causal strength."  ***Ramlet v. E.F. Johnson Co.***, 507 F.3d 1149, 1152–53 (8th Cir. 2007).  "Stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process are not direct evidence."  ***Schaffhauser v. United Parcel Serv., Inc.***, 794 F.3d 899, 902 (8th Cir. 2015).

Six months after terminating Mahler, Anderson spoke to vice president Shannon Norton about inappropriate comments vice president Hansen made to Archer.  Anderson asked Norton to give Hansen another shot.  Anderson told Norton that Hansen "was inappropriate with Charity [Archer] but it had been handled and that Charity had just gotten egged on to pursue that by Pam. . . .  Pam had kind of lost her way at the end and [ ] she got us all riled up about stuff that didn't matter."  The parties agree that Anderson was a decisionmaker.  He made this statement to Norton—a nondecisionmaker—six months after Mahler's termination to explain why she should give Hansen another chance.  It is not related to the decisional process and is not direct evidence.  *See* ***Ramlet***, 507 F.3d at 1152–53 (decisionmaker's statement made four months before termination to individuals not involved in decisionmaking process not direct evidence).

Mahler also claims that Thoelke's statements to Archer are direct evidence. Thoelke told Archer that Mahler tended to embellish and asked her to keep an eye on Mahler. Three months before firing Mahler, Anderson gave Thoelke permission to terminate Mahler in his absence. Though Anderson spoke to Thoelke about his decision to terminate Mahler, he alone made the decision to terminate Mahler in June. Mahler has not identified sufficient evidence in the record showing Thoelke was a decisionmaker or had any substantive role in Anderson's decision to terminate Mahler. Thoelke's statements are not direct evidence. *See **Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.***, 444 F.3d 961, 966 (8th Cir. 2006) (statement by supervisor not direct evidence because he was not involved in the decisionmaking process). Even if she were a decisionmaker, Thoelke's comments do not demonstrate the specific link between Mahler's termination and protected conduct required for direct evidence.

Absent direct evidence, Mahler must create an inference of retaliation under the *McDonnell Douglas* burden-shifting framework. *See **Gibson v. Geithner***, 776 F.3d 536, 540 (8th Cir. 2015), *citing **McDonnell Douglas Corp. v. Green***, 411 U.S. 792, 802 (1973). Under *McDonnell Douglas*, Mahler bears the initial burden to show a prima facie case of retaliation: "(1) [s]he engaged in protected conduct; (2) a reasonable employee would have found the retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct." ***Id.*** If she establishes a prima facie case, the burden shifts to First Dakota to articulate a legitimate, non-retaliatory reason for the adverse action. ***Id.*** If First Dakota does so, the burden shifts back to Mahler to demonstrate that First Dakota's proffered reason is pretextual. ***Id.***

Mahler argues that the district court erred in finding she did not establish a prima facie showing of retaliation. This court need not consider Mahler's arguments concerning her prima facie case. Assuming Mahler has established a prima facie case, she has not demonstrated pretext.

First Dakota claims it terminated Mahler because she repeatedly micromanaged and interfered with other employees. Mahler can prove this is pretextual by showing that it has no basis in fact or that a prohibited reason more likely motivated First Dakota to terminate her. *Id.* While the proof necessary to establish a prima face case is minimal, Mahler must present "more substantial evidence" to establish pretext because "evidence of pretext . . . is viewed in light of the employer's justification." *Id.*

To prove pretext, Mahler primarily relies on: (1) the temporal proximity between her termination and protected conduct, and (2) Anderson and Thoelke's statements that she egged people on and tended to embellish. She also claims Anderson told her in May that "this job is yours until you no longer want it," but never reprimanded her for micromanaging other employees.

Anderson, however, told Mahler several times to stay out of the day-to-day office activities. Multiple employees complained that Mahler micromanaged and interfered with their work. Before her 2015 protected activity, Anderson gave Thoelke and Dondelinger permission to terminate Mahler for contacting the Register of Deeds and interfering with Dondelinger's job. And on June 11—after her protected conduct and four days before her termination—Mahler undermined Hansen's direct order to another employee, weakening evidence of temporal proximity and Anderson's comment that the "job is yours until you no longer want it." *See Cheshewalla v. Rand & Son Const. Co.*, 415 F.3d 847, 852 (8th Cir. 2005) (events occurring between the protected conduct and layoff "eroded any causal connection suggested by the temporal proximity"). Mahler's history of engaging in protected conduct since 2014 without repercussion also supports First Dakota's proffered reason.

Because of the substantial evidence in the record supporting First Dakota's proffered reason, Mahler has failed to create a genuine issue of fact as to pretext. *See Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1118 (8th Cir. 2018) ("The

evidence must do more than raise doubts about the wisdom and fairness of the employer's opinions and actions—it must create a real issue as to the genuineness of the employer's perceptions and beliefs."). Summary judgment is proper.

## III.

Mahler claims the district court erred in granting summary judgment to First Dakota on her hostile work environment claims based on sex and engaging in protected activity. This court addresses Mahler's Title VII and ICRA hostile work environment claims using the same analysis. **Sellers v. Deere & Co.**, 791 F.3d 938, 945 n.6 (8th Cir. 2015).

## A.

Under Title VII, a hostile work environment claim is a type of discrimination claim under 42 U.S.C. § 2000e-2(a). *See* **Harris v. Forklift Sys., Inc.**, 510 U.S. 17, 21–23 (1993); **Meritor Sav. Bank, FSB v. Vinson**, 477 U.S. 57, 63–69 (1986). To establish a hostile work environment claim, Mahler must show that: "(1) she is a member of the class of people protected by the statute, (2) she was subject to unwelcome harassment, (3) the harassment resulted from her membership in the protected class, and (4) the harassment was severe enough to affect the terms, conditions, or privileges of her employment." **Blake v. MJ Optical, Inc.**, 870 F.3d 820, 827 (8th Cir. 2017). Mahler's claim fails at the second step.

"Harassing conduct is considered unwelcome if it was uninvited and offensive." **Quick v. Donaldson Co.**, 90 F.3d 1372, 1378 (8th Cir. 1996). "The proper inquiry is whether the plaintiff indicated by [her] conduct that the alleged harassment was unwelcome." *Id.*, *citing* **Meritor**, 477 U.S. at 68. As evidence of sexual harassment, Mahler points to Anderson's email containing an off-color joke and the "larger milieu" of harassment in the office. However, she responded to Anderson's email, "No offense taken and thank you I did get a good laugh out of it."

-8-

After she was terminated, she texted a friend that she was not sexually harassed, only "fired for reporting it." Because her actions demonstrate that she did not personally experience offensive or unwelcome harassment, her claim fails. *See Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1047–48 (8th Cir. 2005) ("[A]n employee's admission that it was not abusive is fatal to the employee's Title VII sexual harassment claim."). Even if the email were unwelcome harassment, this single incident is not severe enough to alter the conditions of her employment. *See Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 806 (8th Cir. 2013) ("The standard for demonstrating a hostile work environment under Title VII is demanding, and does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace."); *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 618 (8th Cir. 2007) ("Allegations of a few isolated or sporadic incidents will not suffice; rather, the plaintiff must demonstrate the alleged harassment was so intimidating, offensive, or hostile that it poisoned the work environment."). Because Mahler cannot establish a prima facie case, summary judgment is proper.

B.

Mahler claims she experienced a hostile work environment for engaging in protected activity. But on this count, Mahler confuses hostile work environment *discrimination* claims (under 42 U.S.C. § 2000e-2(a)) and hostile work environment *retaliation* claims (under 42 U.S.C. § 2000e-3(a)). This court has said that under Supreme Court precedent, "retaliation claims under Title VII [can] be based on a hostile work environment and need not be based solely on discrete adverse employment actions that affect the terms or conditions of employment." *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1042 (8th Cir. 2007), *citing Burlington N.*, 548 U.S. at 66–67. However, Mahler cannot show she experienced harassment so severe or pervasive as to constitute a materially adverse action. *See Burlington N.*, 548 U.S. at 67–70. The only evidence she points to is her meeting with Anderson, where he told her she was acting like a tyrant and instructed her to stay in her office

with the door closed. This is not sufficient to meet the demanding standard. *Cf. Blomker v. Jewell*, 831 F.3d 1051, 1057 (8th Cir. 2016) ("More than a few isolated incidents are required, and the alleged harassment must be so intimidating, offensive, or hostile that it poisoned the work environment."). Summary judgment is proper.

## IV.

The district court also granted summary judgment to the defendants on Mahler's discrimination claims. Because Mahler's brief does not include this claim in the statement of issues and mentioned it only briefly, she has waived this issue. *See Anderson v. Durham D & M, LLC*, 606 F.3d 513, 515 n.2 (8th Cir. 2010) (issue of retaliation waived where appellant "made only passing reference to retaliation in his opening brief"); *United States v. Simmons*, 964 F.2d 763, 777 (8th Cir. 1992) ("Issues not raised on appeal are waived under Rule 4 of the Federal Rules of Appellate Procedure, which requires the inclusion of a statement of issues in the appellate brief."). Even if she did not waive it, summary judgment is proper because Mahler did not show a causal connection between her termination and sex. *See Shaffer v. Potter*, 499 F.3d 900, 905 (8th Cir. 2007) (to establish prima facie case, plaintiff alleging sex discrimination must show "there are facts that give rise to an inference of gender discrimination").

* * * * * * *

The judgment is affirmed.

_____