# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-1308
_____

Anita M. Kempf

*Plaintiff - Appellant*

v.

Hennepin County

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: December 16, 2020
Filed: February 16, 2021
_____

Before GRUENDER, ERICKSON, and KOBES, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Anita M. Kempf appeals the district court's[1] adverse grant of summary judgment on her claims that her former employer, Hennepin County ("County"), retaliated against her for participating in protected activity in violation of Title VII

_____

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota.

of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Minnesota Whistleblower Act ("MWA"), Minn. Stat. § 181.932. We affirm the dismissal of the Title VII claims and remand with instructions to dismiss the MWA claims without prejudice.

## I.    BACKGROUND

Kempf worked as an architect in the County's Facility Services Department from 1997 to 2016. A dispute arose on March 9, 2016, when Jay Biedny, Kempf's division manager, went to Kempf's office to discuss a project. In Kempf's version of the discussion, Biedny aggressively came into her office and asked her about the project in a "loud and hostile voice." Kempf, who was sitting at her desk facing away from the door, told Biedny that she needed to finish an email. Unsatisfied with that response, Biedny walked towards Kempf and yelled at her to stop emailing; Kempf turned around, found Biedny close to her, and involuntarily screamed. At her deposition, Kempf recounted that Biedny "was totally up against the back of [her] chair," "his crotch was within six inches of [her] face," and "it felt like an assault was imminent." Kempf said that she repeatedly told Biedny to leave and then shut her door to compose herself. According to Biedny, he tried to diffuse the situation but "a rage came over" Kempf, and she ordered him out of her office and slammed the door in his face.

Both Biedny and Kempf reported the incident to the Deputy Director of Facility Services, Barbara O'Brien, that very day. Biedny reported to O'Brien that Kempf yelled and slammed her door. Kempf reported to O'Brien that Biedny physically threatened her. The County has alleged that Kempf was agitated during her conversation with O'Brien and poked O'Brien in the chest. Kempf has admitted the poke but described it as "jovial." With the competing reports in hand, O'Brien launched an investigation.

-2-

On March 17, 2016, the County determined that Kempf committed "a continuing pattern of misconduct" and suspended her for five days without pay. The written suspension notice included the following: Kempf's disciplinary history, a determination that Kempf failed to meet performance expectations, and a finding that Kempf violated County rules when she shouted at Biedny and poked O'Brien.

Kempf returned to work on April 4, 2016, having served her suspension. The next day, she met with Michael Sable, Director of Facility Services, to discuss her concerns about management. Sable told Kempf that she had a number of options. She could file an informal, formal, or external complaint. On April 11, 2016, Kempf filed an informal complaint challenging the suspension notice's allegations and the County's investigation. Kempf specifically complained about the way in which the County handles "gender based threats" and noted "[m]any women leave their" jobs because of similar events, which contributes to the gender-pay gap. After review, the County upheld the suspension.

Throughout April 2016, the County documented several alleged instances of misconduct by Kempf and placed her on paid administrative leave on April 26, 2016. The County issued her a Notice of Intent to Dismiss on May 3, 2016, for "failure to meet job expectations and misconduct." Facing termination, Kempf chose to resign. For convenience, we refer to her resignation as a termination. Although Kempf alleged a number of claims, she appeals only her retaliation claims. These claims include her "suspension-based claims" and "termination-based claims."

## II.    DISCUSSION

We review a district court's grant of summary judgment *de novo*, viewing any facts in which there is a genuine dispute in a light most favorable to the nonmoving party. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)

(quotations omitted). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a).

### A.    Title VII Suspension-Based Claim

The district court dismissed Kempf's suspension-based claim on two grounds: (1) failure to exhaust, and (2) lack of a prima facie case because Kempf did not make a statutorily protected report prior to her suspension. Because we conclude that Kempf has not shown a prima facie case, we need not address exhaustion which the district court raised *sua sponte*.

Title VII prohibits employers from, among other things, retaliating against employees for opposing unlawful employment practices, making a charge, or participating in an investigation under the statute. 42 U.S.C. § 2000e-3(a). For her suspension-based claim, Kempf alleged that the County suspended her in retaliation for opposing Biedny's conduct, which she asserts was "unlawful sexual harassment." Because Kempf's suspension notice indicated she was suspended, in part, for "shouting loudly" at Biedny and having an agitated conversation with O'Brien, Kempf argues that the suspension and notice are direct evidence of retaliation since the County knew she did those things to resist and report Biedny's "sexual harassment." See Barrett v. Omaha Nat'l Bank, 726 F.2d 424, 428 (8th Cir. 1984) (noting Title VII protects an employee from retaliation for reporting sexual harassment).

Kempf failed to show that she engaged in statutorily protected activity because she did not communicate or report any sexual harassment before her suspension. To establish a prima facie retaliation claim, Kempf must present evidence demonstrating that she opposed a practice made unlawful and either explicitly or implicitly

communicated her belief that Biedny's conduct constituted unlawful sexual harassment to her employer. See EEOC v. N. Mem'l Health Care, 908 F.3d 1098, 1101 (8th Cir. 2018); EEOC Compliance Man. § 8–11–B(2) (2006). While Kempf alleged that Biedny physically threatened her prior to her suspension, she never indicated to her employer that Biedny's conduct was overtly sexual or gender based. Kempf conceded during oral argument that she never mentioned Biedny's "crotch" being in her face in her conversation with O'Brien or during the course of the investigation. Kempf first made this characterization during her deposition and then pursued it during litigation, long after she was suspended. Likewise, Kempf's first report of a "gender based threat" to the County was in her informal complaint filed after her suspension. Kempf's pre-suspension actions are too vague to support a finding that she opposed unlawful sexual harassment. See Furcron v. Mail Ctrs. Plus, LLC, 843 F.3d 1295, 1311 (11th Cir. 2016) (Title VII only protects employees who communicate a belief about an unlawful employment practice). We affirm the grant of summary judgment on the suspension-based claim.

### B.    Title VII Termination-Based Claim

For her termination-based claim, Kempf contends the County terminated her in retaliation for complaining about Biedny, the investigation, and the way the County handles gender-based threats. Without direct evidence of retaliation, we apply the familiar burden-shifting analysis under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, Kempf bears the initial burden of showing that she engaged in protected conduct, that a reasonable employee would have found the retaliatory action materially adverse, and the existence of a causal link between the protected conduct and materially adverse action. See Mahler v. First Dakota Title Ltd. P'ship, 931 F.3d 799, 805 (8th Cir. 2019). If Kempf establishes a prima facie case, "the burden shifts to [the County] to articulate a legitimate, non-retaliatory reason for the adverse action." Id. If the County articulates such a reason, then "the

burden shifts back to [Kempf] to demonstrate that [the County's] proffered reason is pretextual." Id. To succeed, she must both discredit the County's explanation for her termination and "show the circumstances permit drawing a reasonable inference that the real reason for [that action] was retaliation." Gilbert v. Des Moines Area Cmty. Coll., 495 F.3d 906, 918 (8th Cir. 2007).

Following her suspension, Kempf submitted an informal complaint that expressly made allegations about improper investigations regarding gender-based threats. Assuming a prima facie case, the burden shifts to the County to provide a legitimate, non-retaliatory reason for Kempf's termination. The County asserts the termination was supported by four instances of misconduct documented in April 2016. First, on April 5, 2016, Kempf used her badge to enter the office suite of Chester Cooper, Director of the Department of Community Corrections and Rehabilitation ("DOCCR"), without express permission. Second, on April 11, 2016, Kempf approached Cooper in the skyway in the County building and loudly and aggressively complained about her job. Third, on April 15, 2016, Kempf missed a deadline. Fourth, on April 20, 2016, Kempf was "abrasive, disrespectful, and unprofessional" at a client meeting. Each of these are legitimate, non-retaliatory reasons sufficient to shift the burden back to Kempf to demonstrate that the reasons given are pretextual.

Below, Kempf challenged only two of the County's proffered reasons as pretextual, which caused the district court to conclude that Kempf's failure to address the other acts of misconduct justified dismissing her termination-based claim. On appeal, Kempf contends the district court erred in determining that she was required to produce evidence attacking each of the County's four reasons for termination. While this Court has not specified whether an employee must produce evidence showing that each of an employer's legitimate, non-retaliatory reasons for an adverse action are pretextual, the parties agree the employee must do so. See Sher v. U.S.

-6-

Dep't of Veterans Affs., 488 F.3d 489, 507–08 (1st Cir. 2007) (collecting cases and finding the same). Kempf contends her case falls into an exception to the general rule and should survive summary judgment because the County gave "a laundry list of reasons for [her] termination" and she has shown pretext on some of the reasons which raises serious doubt as to the rest.

Other courts have articulated a variety of tests for determining whether an employee's claim may survive summary judgment without the employee rebutting all her employer's justifications. See Jaramillo v. Colo. Jud. Dep't, 427 F.3d 1303, 1309–10 (10th Cir. 2005) (per curiam) (collecting tests). The Seventh Circuit has persuasively determined that if "multiple grounds" are offered by the employer and those grounds are "so intertwined, or the pretextual character of one of them so fishy and suspicious" that it raises questions about the other proffered grounds, an employee can withstand summary judgment by showing the pretextual nature of less than all of the grounds. Fischer v. Avanade, Inc., 519 F.3d 393, 404 (7th Cir. 2008) (cleaned up); see Richey v. City of Independence, 540 F.3d 779, 786–87 (8th Cir. 2008) (Shepherd, J., concurring) (noting the Seventh Circuit's approach is sound). This approach rests on the idea that the ultimate question on summary judgment is whether a reasonable fact finder could find the employer's true reason for an adverse employment action was based on retaliatory intent. There are cases in which a proffered reason is obviously "fishy" or so "intertwined" with other pretextual reasons that a reasonable fact finder could doubt the others, without independent evidence of pretext on each reason.

Kempf's assertion that the County's reasons are "substantially intertwined" because the events all took place in a "three-week window" in April 2016 is contrary to the plain meaning of intertwined. Intertwined means something more than temporal proximity. Rather, the question is whether the employer's reasons are so factually intertwined or dependent on one another that showing pretext on one raises

a genuine question as to whether the other reasons are valid. This is not the case here. An aggressive conversation and being unprofessional at a client meeting are not fairly described as being intertwined with entering a secured suite or missing a deadline. While temporal proximity may be relevant where the employer offers a multitude of reasons in a very short time, in this case, the County offered four reasons that appear on their face to be insular and it is not enough for Kempf to cast doubt on only half of them.

Kempf next argues the County's "fantastical portrayal" about her entering the DOCCR suite is so "fishy" that it necessarily renders the County's "other reasons suspect." Even if the County exaggerated the gravity of Kempf's entry into the suite, and even if Kempf's explanation that she had an appointment with Cooper is true, we are not persuaded that Kempf has made such a strong showing of pretext on that reason for her termination that it destroys the County's credibility on its remaining justifications. Cooper was obviously concerned about the incident as he mentioned to Sable that Kempf had accessed the suite with her badge and made inquiry as to who else had access to the suite. Cooper later explained in his deposition that no one in his department was "afraid" of Kempf but that he had security concerns about anyone (including Kempf) accessing the suite without his authorization. Even if the County stretched its justification to include "fear" among employees, this embellishment is not so "outrageous" that it necessarily undermines the County's other legitimate explanations for terminating Kempf. Jaramillo, 427 F.3d at 1310.

Because Kempf has not shown the County's reasons are sufficiently intertwined or fishy that rebutting only some of the reasons discredits them all,[2] we affirm the district court's judgment on Kempf's termination-based claim under Title VII.

---

[2]We reject Kempf's belated attempt to show pretext for every reason now, when she did not produce evidence challenging each reason to the district court.

## C.    MWA Claims

Kempf also asserts retaliation claims under the MWA. The district court, exercising supplemental jurisdiction under 28 U.S.C. § 1367(a), dismissed those claims on the same grounds as the Title VII claims.

Kempf contends the MWA varies from Title VII, such that her MWA claims could survive even if her Title VII claims fail. Kempf asserts the MWA protects broader conduct and Minnesota law would not require an employee to disprove every reason offered by her employer. See Green v. Franklin Nat'l Bank of Minneapolis, 459 F.3d 903, 914 n.8 (8th Cir. 2006) (noting the elements for Title VII and the MWA are the same but not fleshing out these issues). The County, on the other hand, argues that Kempf's MWA claims are barred by an exclusivity provision in the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.04. While the Minnesota Court of Appeals recently suggested that the MHRA's exclusivity provision may not apply under some circumstances, see Hinrichs-Cady v. Hennepin Cnty., 943 N.W.2d 417, 424 (Minn. Ct. App. 2020), the Minnesota Supreme Court has not decided the question. Given these relatively novel questions of state law, we find the better course is to dismiss the MWA claims without prejudice so that they can be taken up by the Minnesota state courts. See Hervey v. Cnty. of Koochiching, 527 F.3d 711, 726–27 (8th Cir. 2008) (reaching the same conclusion where all the federal claims were dismissed and only a state claim remained).

## III.    CONCLUSION

For the foregoing reasons, we affirm the district court's judgment on the retaliation claims under Title VII and remand the case to the district court with instructions to modify the final judgment to dismiss without prejudice the retaliation claims under the MWA.

_____