# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2282
_____

Ada Martinez-Medina

*Plaintiff - Appellant*

v.

Brooke L. Rollins, Secretary, United States Department of Agriculture, FSA[1]

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: June 11, 2025
Filed: July 22, 2025
_____

Before COLLOTON, Chief Judge, ARNOLD and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Ada Martinez-Medina, an employee of the United States Department of Agriculture, sued its Secretary under Title VII of the Civil Rights Act of 1964 for

---

[1]Secretary of Agriculture Rollins is automatically substituted for her predecessor under Federal Rule of Appellate Procedure 43(c)(2).

disparate treatment, retaliation, and a hostile work environment. The district court[2] granted the defendant's motion for summary judgment. Finding no reversible error, we affirm.

## I. Background

Martinez-Medina is a Hispanic female of Puerto Rican descent. She began working for the Farm Production and Conservation Business Center of the United States Department of Agriculture in 2016 as a GS-05 level employee. By 2018, she had been promoted to the GS-09 level. According to Martinez-Medina, her second line supervisor, Jeff Wagner, routinely assigned her work above her pay grade and took credit for her work.

Between 2017 and 2018, Martinez-Medina filed two formal Equal Employment Opportunity ("EEO") complaints with the United States Department of Agriculture, alleging discrimination, retaliation, and a hostile work environment. The parties began settlement negotiations and entered into an agreement on August 15, 2018. As relevant here, the settlement agreement provided that Martinez-Medina would "[r]elease, waive, and withdraw, with prejudice, any and all complaints, grievances, appeals, civil actions, charges of Unfair Labor Practice, or claims . . . against the Agency . . . arising out of or regarding Employee's employment with the Agency through and including the effective date of this Agreement."

Following entry of the settlement agreement, Martinez-Medina was assigned a new first line supervisor—Sudhir Nellutla. Nellutla was required to complete Martinez-Medina's 2018 performance evaluation by October 30, 2018. Nellutla, who was temporarily on leave under the Federal Employees Family Friendly Leave Act, did not complete Martinez-Medina's performance evaluation by the deadline.

---

[2]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

-2-

Instead, Martinez-Medina received her performance evaluation on December 6, 2018, in which she was awarded the highest rating possible. Due to her high performance rating, Martinez-Medina received a 2% increase in pay.

On December 12, 2018, Martinez-Medina was engaged in conversation with her acting supervisor, Carraig Stanwyck, and a coworker, Charlene Niffen, when Niffen asked Stanwyck if Martinez-Medina could assist her with some work. Stanwyck responded, "[w]ell I guess she could bring you coffee" and started laughing. Martinez-Medina became angry and told Stanwyck that she was going to report the incident. Stanwyck immediately left the group and self-reported the incident to Wagner. Martinez-Medina sat outside Wagner's office during his conversation with Stanwyck and allegedly heard Wagner refer to her as an "incompetent woman." After discussing the incident with Stanwyck, Wagner reported it to Cynthia Towers, Stanwyck's first line supervisor. Towers spoke with Stanwyck, who took responsibility for his statement. Stanwyck then discussed the incident with Martinez-Medina, and there were no further issues between the two.

Less than a week after the incident with Stanwyck, Martinez-Medina filed an informal EEO complaint. The matter was assigned to Rene Rodriguez, who conducted an initial interview with Martinez-Medina on February 19, 2019. During the interview, Martinez-Medina requested that she be assigned to a different work group. Rodriguez broached the reassignment issue with Wagner and Darren Ash, Martinez-Medina's third line supervisor. Wagner told Rodriguez that he would "do everything . . . to try to find an organization for [Martinez-Medina] to be transferred to" and that he had discussed a potential reassignment opportunity with another supervisor. The record does not indicate what happened with this potential transfer. As for Ash, he told Rodriguez that he would grant Martinez-Medina's reassignment request once she directly submitted the request to him. However, Martinez-Medina never submitted her reassignment request directly to Ash. Instead, on March 8, 2019, Martinez-Medina withdrew her informal EEO complaint.

On March 26, 2019, Martinez-Medina informed Stanwyck that another department "had offered [her] a potential detail opportunity." Stanwyck told Martinez-Medina that he "hate[d] the idea of losing [her]," but that he thought the detail "would be a great development opportunity." Martinez-Medina agreed that "it would be a great development opportunity." Nevertheless, she stated: "I don't know how I feel about this, since this is the third department that has asked me if I would consider joining their team. Maybe it's because I hear that you are always saying how great of a job I do . . . ." Martinez-Medina later declined the detail opportunity.

On March 27, 2019, Martinez-Medina filed a formal EEO complaint with her employer, alleging that she had suffered discrimination, a hostile work environment, and retaliation. After the agency denied relief, Martinez-Medina filed the present action in federal district court, alleging disparate treatment based on race, sex, and national origin; exposure to a hostile work environment; and retaliation due to her prior protected EEO activity. The Secretary filed a motion for summary judgment, asserting that Martinez-Medina had not presented sufficient evidence in support of any of her claims. The district court agreed with the Secretary and granted the motion for summary judgment.

## II. Discussion

We review *de novo* the district court's grant of summary judgment. *Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.*, 387 F.3d 705, 710-11 (8th Cir. 2004). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### A. Disparate Treatment Claim

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). An employee may survive an employer's motion for summary judgment on a Title VII claim "in one of two ways." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011) (en banc). The first is by proof of direct evidence of discrimination, where the term "direct" "refers to the causal strength of the proof" proffered by the employee. *Id.* "But if the [employee] lacks evidence that clearly points to the presence of an illegal motive," she can avoid summary judgment only "by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* [framework], including sufficient evidence of pretext." *Id.* Because Martinez-Medina does not rely on direct evidence, she "must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas*" framework. *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004).

Under the *McDonnell Douglas* framework, the employee bears the burden of establishing a *prima facie* case of disparate treatment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To do so, the employee must prove: "(1) that [she] is a member of a protected class; (2) that [she] was qualified for [the] position and performed [her] duties adequately; and (3) that [she] suffered an adverse employment action under circumstances that would permit the court to infer that unlawful discrimination was involved." *Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005). Once the employee has made a *prima facie* showing of disparate treatment, the burden shifts to the employer to articulate "a legitimate, nondiscriminatory reason for its adverse employment action." *Bearden v. Int'l Paper Co.*, 529 F.3d 828, 831 (8th Cir. 2008). If the employer articulates such a reason, "the burden returns to the employee to prove that the proffered reason is pretextual." *Id.* at 832. The employee may establish pretext either by "persuading the court that a discriminatory reason more likely motivated the employer" or by "showing that the employer's proffered explanation is unworthy of credence." *Adams v. Nolan*, 962 F.2d 791, 795 (8th Cir. 1992).

Martinez-Medina contends that she has established a *prima facie* case of disparate treatment based on the following alleged adverse employment actions: (1) Wagner assigned her work previously performed by GS-13 level employees, (2) Wagner took credit for her work, (3) her 2018 performance review was delayed, and (4) her request for reassignment was not granted. Martinez-Medina, however, has not established that the first three acts constitute adverse employment actions under the *McDonnell Douglas* framework. An adverse employment action is one that results in "some harm" to "an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354-55 (2024). The first three acts are not adverse employment actions because they did not affect "an identifiable term or condition of [Martinez-Medina's] employment." *Id.* at 355. There is no evidence that Martinez-Medina suffered termination, a reduction in pay or benefits, or some other discriminatory effect due to her employer's actions. *See Arnold v. United Airlines, Inc.*, No. 24-2179, 2025 WL 1778643, at *5 (7th Cir. June 27, 2025) (finding no adverse action when the employee's "compensation, benefits, vacation times, and working hours were not affected").

Take, for example, Martinez-Medina's assertion that she was required to perform work previously completed by GS-13 employees. Martinez-Medina does not present sufficient evidence that performing such work was outside the scope of her job responsibilities as a GS-09 employee, such that performing the work constituted a change in her employment conditions. *See id.* ("[The employee] was given some additional assignments, and some of her assignments changed. But these changes were all within the normal scope of her employment and thus did not adversely affect the terms and conditions of her employment."). Indeed, in an affidavit, Towers stated that job responsibilities were not broken down by pay grade. With respect to Wagner having taken credit for her work product, Martinez-Medina speculates that "receiving the credit [for her work] . . . would [have] assist[ed] her in her upward mobility" within the agency. However, she presents no evidence that Wagner's alleged conduct resulted in a lost opportunity for promotion. As for the delayed performance review, Martinez-Medina does not present evidence that the delay had any effect on a term or condition of her employment. She received the

-6-

highest performance rating and a 2% annual increase in pay due to her positive performance review. Thus, Martinez-Medina cannot establish a *prima facie* case of disparate treatment based on the first three acts because they are not adverse employment actions.

As to the fourth act regarding her request for reassignment, we need not decide whether it qualifies as an adverse employment action sufficient to establish a *prima facie* case of disparate treatment because Martinez-Medina has not established that her employer's "legitimate, nondiscriminatory reason" for the lack of reassignment was pretextual. *Bearden*, 529 F.3d at 831; *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 954-55 (8th Cir. 2012) (assuming without deciding that the employee had established a *prima facie* case of discrimination and resolving the matter under the second and third steps of the *McDonnell Douglas* framework). The Secretary contends that Martinez-Medina's reassignment request was not granted because she failed to follow through on her request and later withdrew it. The Secretary points out that Wagner and Ash actively supported Martinez-Medina's requests for assignment and attempted to help her find another suitable position which would have preserved her pay grade. In response, Martinez-Medina does not present any evidence that the Secretary's reason was pretextual but merely contends that it must have been because her reassignment request "came to naught." Because the burden is on Martinez-Medina to present sufficient evidence that her employer's legitimate, nondiscriminatory reason was pretextual—and Martinez-Medina does not present any evidence of pretext—we conclude that summary judgment to the defendant was appropriate. *See Bearden*, 529 F.3d at 831-32 (noting that the burden is on the employee to prove that the employer's proffered reason was pretextual).

## B. Hostile Work Environment

A hostile work environment in contravention of Title VII exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Liles v. C.S. McCrossan, Inc.*, 851

F.3d 810, 823 (8th Cir. 2017) (citation modified).  To establish a *prima facie* case of a hostile work environment, an employee must establish: "(1) she is a member of the class of people protected by [Title VII], (2) she was subject to unwelcome harassment, (3) the harassment resulted from her membership in the protected class, and (4) the harassment was severe enough to affect the terms, conditions, or privileges of her employment."  *Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799, 806 (8th Cir. 2019) (citation modified).

As an initial matter, Martinez-Medina contends that she can rely on pre-settlement conduct as continuing evidence of a hostile work environment.  However, the settlement agreement expressly discontinued liability for conduct predating August 15, 2018.  Thus, all acts and incidents that occurred before August 15, 2018 cannot be considered as evidence in support of Martinez-Medina's hostile work environment claim.

Turning to the allegations that postdate August 15, 2018, Martinez-Medina's evidence of a hostile work environment includes: (1) the assignment of work previously performed by GS-13 employees, (2) Wagner taking credit for her work, (3) the delay in receiving her 2018 performance review, (4) her reassignment request not being granted, (5) Stanwyck's coffee comment, (6) Wagner's comment that Martinez-Medina was an "incompetent woman," and (7) various other derogatory comments that Wagner allegedly made on unknown dates.  We agree with the district court that Martinez-Medina has not presented sufficient evidence of a hostile work environment.  "The standard for demonstrating a hostile work environment under Title VII is demanding, and does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace."  *Liles*, 851 F.3d at 823 (internal quotation marks omitted).  We have consistently required much more severe conduct than that alleged here.  For example, in *Anderson v. Family Dollar Stores of Arkansas, Inc.*, we affirmed the district court's grant of summary judgment to the employer on the employee's hostile work environment claim even though the employee's supervisor had rubbed the employee's "shoulders or back at times," called her "baby doll," "accus[ed] her of not wanting to be 'one of my girls,'" told

-8-

her that "she should be in bed with him," and insinuated "that she could go farther in the company if she got along with him." 579 F.3d 858, 862-64 (8th Cir. 2009); *see also Liles*, 851 F.3d at 823 (discussing several cases). Accordingly, summary judgment on Martinez-Medina's hostile work environment claim was appropriate.

## C. Retaliation

Title VII forbids an employer from "discriminat[ing] against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). When, as here, there is no direct evidence of retaliation, we apply *McDonnell Douglas*'s burden shifting framework. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011). To establish a *prima facie* case of retaliation under the *McDonnell Douglas* framework, the employee must prove that "(1) she engaged in protected conduct; (2) a reasonable employee would have found the retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct." *Liles*, 851 F.3d at 818.

Martinez-Medina asserts that her supervisors retaliated against her for engaging in protected EEO activity. In support of her retaliation claim, she relies on the same acts as those she relied on to prove her claim of disparate treatment, namely that: (1) she was assigned work previously performed by GS-13 employees, (2) Wagner took credit for her work, (3) she received her 2018 performance review several months late, and (4) her request for reassignment was not granted. We conclude that Martinez-Medina has not established a *prima facie* case of retaliation because the acts are not causally linked to the protected EEO activity. Aside from her own speculation, Martinez-Medina does not explain how any of the acts were done as retaliation for her prior EEO activity. *See Parker v. United States Dep't of Agric.*, 129 F.4th 1104, 1114 (8th Cir. 2025) ("Parker cites no evidence of any retaliatory conduct that was causally connected to the filing of her 2013

complaint."). Moreover, the temporal nexus between her protected EEO activity and the allegedly retaliatory acts "was not sufficiently contemporaneous . . . to raise the inference of a causal connection." *Id.* Martinez-Medina acknowledges that Wagner began assigning her work previously performed by GS-13 employees and taking credit for it "[f]rom the time she started" working at the United States Department of Agriculture, meaning that the allegedly retaliatory acts began occurring well before she filed her EEO complaints. *See Chivers v. Wal-Mart Stores, Inc.*, 641 F.3d 927, 933 (8th Cir. 2011) (concluding that there did not exist a causal connection between the adverse employment actions and the protected activity because the adverse employment actions "occurred sometime before" the protected activity). And the last two acts occurred at least several months after their filing. *See Lewis v. St. Cloud State Univ.*, 467 F.3d 1133, 1138 (8th Cir. 2006) ("We have held that an interval as brief as two months did not show causation for purposes of establishing a retaliation claim and that a two-week interval was sufficient, but barely so." (citation modified)). Thus, Martinez-Medina has not established a *prima facie* case of retaliation, and we discern no error in the district court's grant of summary judgment to the Secretary.

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____